903 F.2d 243
 52 Fair Empl.Prac.Cas. 1492,
53 Empl. Prac. Dec. P 39,949, 58 USLW 2698,
60 Ed. Law Rep. 698, 12 Employee Benefits Ca 1497
 Gerald SCHAFER, Appellant,
v.
BOARD OF PUBLIC EDUCATION OF THE SCHOOL DISTRICT OF
PITTSBURGH, PA.; Pittsburgh Federation of
Teachers, Local 400, American Federation
of Teachers, AFL-CIO.
 No. 89-3686.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 27, 1990.
Decided May 17, 1990.
 
 Edward J. Feinstein (argued), Pittsburgh, Pa., for appellant.
 Robert E. Durrant (argued), Meyer, Darragh, Buckler, Bebenek, Eck & Hall, Pittsburgh, Pa., for Bd. of Public Educ. of the School Dist. of Pittsburgh.
 Sandra Reiter Kushner (argued), Rothman, Gordon, Foreman & Groudine, P.C., Pittsburgh, Pa., for Pittsburgh Federation of Teachers, Local 400.
 Before HIGGINBOTHAM, Chief Judge, and HUTCHINSON and COWEN, Circuit Judges.
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Chief Judge.
 
 
 1
 This is a sex discrimination case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e to 2000e-17 (Title VII). Appellant, Gerald Schafer (Schafer or employee), claims that he was impermissibly denied a one-year childrearing leave which was available to female employees, at their option, under the collective bargaining agreement between appellees, the Board of Public Education of the School District of Pittsburgh, Pennsylvania (the Board), and the Pittsburgh Federation of Teachers, Local 400, American Federation of Teachers, AFL-CIO (the Federation or union). Schafer also alleges that as a result of the denial of the leave, he was forced to resign from his position as a teacher.
 
 
 2
 In this appeal from a grant of summary judgment for the Board and the Federation, we are faced with three issues: 1) whether the district court erred in determining that there existed no question of material fact to support Schafer's claim that the Board and the union violated his rights under Title VII; 2) whether the district court erred in denying appellant's motion for summary judgment after concluding that there was a factual question as to the reasonableness of his resignation; and 3) whether the district court erred in denying the Federation's motion to dismiss.
 
 
 3
 Because we find as a matter of law that the Board violated Schafer's rights under Title VII, we will reverse the district court's grant of summary judgment to the Board and the Federation. We also conclude that the district court properly decided that there is a factual question of whether it was reasonable for Schafer to resign, thus, we will affirm the district court's denial of Schafer's motion for summary judgment but remand for a determination of whether Schafer was constructively discharged. However, we will reverse the district court's denial of the Federation's motion to dismiss, because we find that the Federation is not an indispensable party, the statute of limitations has run against it, and there is no equitable tolling in this instance.
 
 I.
 
 4
 Schafer, a male, was employed as a teacher by the Board, from August 1978 until December 14, 1981. In late August or early September of 1981, Schafer requested an unpaid leave of absence for the 1981-1982 school year for the purpose of childrearing. Schafer requested the leave from Charles Allebrand, the Board's Assistant Personnel Director for Special Education, pursuant to Article 31, Sec. 3(c) of the collective bargaining agreement between the Board and the Federation.[1] Allebrand advised Schafer that he had never known a male to be granted such a leave, although females were routinely granted them. Allebrand suggested that Schafer apply for a ninety-day unpaid emergency leave, but he also provided Schafer with an application for the one-year leave. Schafer claims that he informed Allebrand that if he did not receive the one year leave and could not find appropriate child care, he would be forced to resign.
 
 
 5
 Schafer was granted the three-month unpaid emergency leave to expire on December 14, 1981. He also applied for unpaid childrearing leave from the expiration of the three-month emergency leave to the end of the school year. On November 20, 1981, the Board informed Schafer that his application for childrearing leave was denied. Schafer alleges that he was unable to obtain appropriate child care. On November 30, 1981, he submitted a letter of resignation to be effective on December 14, 1981. In his letter of resignation, Schafer stated that he was forced to resign because he was refused leave to care for his son.
 
 
 6
 At the end of December 1981, Schafer did locate day care for his son. However, he did not request reinstatement at that time. He had no correspondence with the Board on the issue of reinstatement until June 23, 1982, when he requested that the Board reconsider its denial of his leave so he could return to work in September of 1982.[2] Schafer received a response from E. Robert Galligan of the Board, denying his request. The response indicated that Schafer was no longer an employee of the District and therefore had no right to the leave.
 
 
 7
 Prior to his resignation, Schafer spoke to Federation officials, Paul Francis and Joseph Zunic, who indicated that the union was unable to help him because Article 31 of the collective bargaining agreement provided leave only for females. Subsequently, Schafer advised Zunic that he filed a complaint before the Pennsylvania Human Relations Commission (PHRC) and asked him to call the PHRC. The Federation was sent a copy of a PHRC letter dismissing Schafer's complaint as untimely under state law and advising Schafer that he could pursue his complaint with the Equal Employment Opportunity Commission (EEOC).
 
 
 8
 On July 13, 1982, Schafer filed a charge of discrimination against the Board with the EEOC. On June 20, 1984, at the request of the EEOC, Schafer signed an amended EEOC charge against both the Board and the Federation.
 
 
 9
 On September 19, 1984, the EEOC determined that there was reasonable cause to believe that the charge was true and directed a "Notice of Conciliation Process" to Schafer and the Board. The Federation was advised of this determination on September 26, 1984. On December 23, 1986 the Department of Justice, on behalf of the United States, initiated an action against the Board, the Federation, and a number of other unions with which the Board had collective bargaining agreements with similar provisions relating to childrearing leave. Acting upon Schafer's complaint, the United States alleged that the appellees' policy and practice with regard to childrearing leave, as contained in the collective bargaining agreement, constituted a pattern or practice of resistance to the full enjoyment by men and women of their right to employment without discrimination or classification based on sex.
 
 
 10
 On March 13, 1987, the United States and the appellees entered into a consent agreement and a decree was issued granting the Board's male employees childrearing leave on the same basis as childrearing leave is granted female employees. There were no findings on the merits nor any admission by the appellees of any violation of Title VII.
 
 
 11
 The consent decree was prospective in nature and therefore no relief was granted to Gerald Schafer, who had resigned. On March 13, 1988, Schafer moved and was granted the right to intervene as a party plaintiff. Schafer's complaint charged the Board and the Federation with sex discrimination in employment and sought reinstatement and back pay.[3] On March 21, 1988, Schafer filed a motion for summary judgment, alleging that no material facts remained in dispute and that judgment should be entered as a matter of law. This motion was denied on October 6, 1988, although the court noted that Schafer had made out a prima facie case of discrimination against male employees.
 
 
 12
 On August 9, 1989, appellees filed a joint motion for summary judgment, alleging that the leave policy was a permissible accommodation to females under California Federal Savings & Loan Association v. Guerra, 479 U.S. 272, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987), and Harness v. Hartz Mountain Corporation, 877 F.2d 1307 (6th Cir.1989), cert. denied, --- U.S. ----, 110 U.S. 728, 107 L.Ed.2d 747, (1990).[4] The district court granted the motion on September 15, 1989, interpreting the leave in question as one of maternity and not childrearing and concluding that Guerra permitted this favorable treatment to pregnant females.
 
 
 13
 On October 12, 1989, Schafer filed a notice of appeal from both the October 6, 1988 order denying his summary judgment motion and the September 15, 1989 order granting summary judgment for the appellees.
 
 
 14
 Our review of the district court's order granting appellees' summary judgment motion and denying appellant's summary judgment motion is plenary. Our review of the district court's determination that there was sufficient basis to permit Schafer to maintain a Title VII action against the Federation is also plenary.
 
 II.
 Appellees' Motion for Summary Judgment
 
 15
 Federal Rule of Civil Procedure 56 provides that a district court may grant a summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir.), cert. dismissed, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). See also Small v. Seldows Stationery, 617 F.2d 992, 994 (3d Cir.1980). In Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), the Supreme Court stated that Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." In making this determination, the district court must view the facts in the light most favorable to the nonmoving party, and reasonable doubt as to the existence of a genuine issue of material fact is to be resolved against the moving party. Continental Insurance Co. v. Bodie, 682 F.2d 436, 438 (3d Cir.1982). On appeal, we are required to apply the same test as that used by the district court. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).
 
 
 16
 A plaintiff in an employment discrimination action may establish a prima facie case either through direct evidence of discrimination, Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985), or through the framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny. Bruno v. W.B. Saunders Co., 882 F.2d 760, 764 (3d Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 880, 107 L.Ed.2d 962 (1990); Jackson v. University of Pittsburgh, 826 F.2d 230, 232-33 (3d Cir.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988). Under the McDonnell Douglas framework, the plaintiff has the burden of proving a prima facie case of discrimination by a preponderance of the evidence; if proven, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the challenged action; if the defendant carries its burden, the plaintiff must have an opportunity to prove by a preponderance of the evidence that the legitimate reason offered by the defendant was not the true reason, but a pretext for discrimination. Jackson, 826 F.2d 230, 232 (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981)). See also Bellissimo v. Westinghouse Electric Corp., 764 F.2d 175, 179 (3d Cir.1985), cert. denied, 475 U.S. 1035, 106 S.Ct. 1244, 89 L.Ed.2d 353 (1986).
 
 
 17
 We recognize, as did the district court, that appellant has made out a prima facie case of discrimination. Article 31, Sec. 3(c) of the collective bargaining agreement is discriminatory on its face. Appellees concede that Schafer was ineligible for leave under Article 31, Sec. 3(c) because he is male, and therefore did not meet the necessary condition precedent for receiving childrearing leave. Appellant alleges that the denial of his requested leave of absence violated Title VII because under the collective bargaining agreement, a leave of absence would be granted to a female employee but not a male employee. We agree and conclude that appellant has established a prima facie case of discrimination.
 
 
 18
 Once a prima facie case of discrimination has been established, the defendant must advance reasons for its challenged policy. Burdine, 450 U.S. at 252-53, 101 S.Ct. at 1093-94. Appellees rely on the Pregnancy Discrimination Act of 1978 (PDA), codified at 42 U.S.C. Sec. 2000e(k), as establishing a legitimate reason for its discriminatory policy. They argue that the PDA, as interpreted by the Supreme Court in Guerra, permits favorable treatment of pregnant females. This court has not heretofore considered whether, under Guerra, an employer may provide up to one year childrearing leave to females after giving birth, without a showing of disability, but may deny childrearing leave to males who are fathers of newborn infants.
 
 
 19
 In Guerra, a pregnant worker's employer, joined by a trade association of employers and another organization representing businesses in California, brought suit seeking a declaration that a California statute requiring employers to provide leave and reinstatement to employees disabled by pregnancy was preempted by Title VII. The majority in Guerra held that Title VII, as amended by the PDA, does not preempt a state statute mandating limited favorable treatment of pregnant employees. Id. at 292. A narrower majority held that limited preferential treatment of pregnant employees for the period of actual physical disability would not violate Title VII. Id. at 290, 107 S.Ct. at 694.
 
 
 20
 We agree with the district court's conclusion that the leave at issue in the collective bargaining agreement is not a fringe benefit as characterized by the appellant. The relevant portions of Article 31 pertain to maternity benefits and other portions relate to childrearing benefits. We disagree with the district court's holding that Guerra allows preferential treatment to employees who have recently given birth to a child without a simultaneous showing of a continuing disability related to either the pregnancy or to the delivery of the child.
 
 
 21
 In Guerra, the Court emphasized the limited nature of the benefits at issue and noted that the statute would allow benefits to "cover only the period of actual physical disability on account of pregnancy." 479 U.S. at 290, 107 S.Ct. at 694 (emphasis in original). Guerra permits favorable leave treatment when the disability is related to pregnancy. The inquiry here is whether, under Guerra, a leave for up to one year for childrearing is related to the conditions of pregnancy, childbirth or related medical conditions. Article 31, Sec. 3(c) allows a pregnant teacher two options: (1) a period of sick leave combined with an unpaid leave for childbearing or childrearing for a maximum of one year, or (2) maternity leave not exceeding one year. There is no requirement under Article 31, Sec. 3(c) that the female be disabled in order to obtain the unpaid leave for up to one year (for either childrearing or childbearing). The essential facts in Guerra are dissimilar to the present situation, where the childrearing leave is made available to females only, without a showing of a disability related to pregnancy or childbearing.
 
 
 22
 There is no evidence in the record that suggests that the normal maternity disability due to "pregnancy, childbirth, or related medical conditions" extends to one year.[5] We hold as a matter of law that Article 31, Sec. 3(c) of the collective bargaining agreement contravenes Title VII and is thus per se void for any leave granted beyond the period of actual physical disability on account of pregnancy, childbirth or related medical conditions. Accordingly, we will reverse the district court's grant of the appellees' motion for summary judgment and remand for a determination of whether appellant was constructively discharged.
 
 III.
 Constructive Discharge
 
 23
 In Goss v. Exxon Office Systems Co., 747 F.2d 885 (3d Cir.1984), this court considered whether acts of discrimination in violation of Title VII can make working conditions so intolerable that a reasonable employee would be forced to resign. See also Levendos v. Stern Entertainment, Inc., 860 F.2d 1227, 1230 (3d Cir.1988). As the Goss court noted, the courts of appeals that have addressed this issue have developed two basic standards for determining constructive discharge, the subjective test and the objective test. The subjective standard requires a finding that the discrimination complained of amounts to an intentional course of conduct calculated to force the victim's resignation. See Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir.1985), cert. denied, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986) (a plaintiff must prove "deliberateness of the employer's action, and intolerability of the working conditions" to prove constructive discharge); see also Coe v. Yellow Freight System, Inc., 646 F.2d 444, 454 (10th Cir.1981) (must be a deliberate effort on the employer's part to make the working situation difficult for the employee); cf. Carino v. University of Oklahoma Bd. of Regents, 750 F.2d 815, 817 (10th Cir.1984) (no constructive discharge "since there was no scheme to make conditions such that [the employee] would resign...."). The objective standard, on the other hand, requires no more than a finding that the conduct complained of would have the foreseeable result of creating working conditions that would be so unpleasant or difficult that a reasonable person in the employee's position would resign. See Brooms v. Regal Tube Co., 881 F.2d 412, 423 (7th Cir.1989) (affirming district court's application of reasonable person standard); Watson v. Nationwide Insurance Co., 823 F.2d 360, 361 (9th Cir.1989) ("plaintiff need not show that the employer subjectively intended to force the employee to resign"); Williams v. Caterpillar Tractor Co., 770 F.2d 47, 50 (6th Cir.1985) ("Reasonableness ... is measured ... from the perspective of a reasonable person in the position that [the employee] was in at the time of [his or] her discharge.") (emphasis in the original) (citation omitted). This court has adopted the objective standard, holding that "no finding of a specific intent on the part of the employer to bring about a discharge is required for the application of the constructive discharge doctrine." Goss, 747 F.2d at 888. See also Levendos, 860 F.2d at 1230 (court adopts "reasonable person test, which is focused on the impact of an employer's actions, whether deliberate or not, upon a 'reasonable' employee.") (citation omitted).
 
 
 24
 In Goss, a female sales representative was verbally abused by her supervisor about her decision to become pregnant. In addition, her employer assigned her lucrative sales territory to a male representative despite the plaintiff's successful performance, thus effectively cutting her pay. Her attempts to pursue remedies in-house resulted in an ultimatum from her employer that she either accept the new assignment or resign. 747 F.2d at 888. We affirmed the district court's finding that the facts were legally sufficient to establish constructive discharge. Id. at 889.
 
 
 25
 In Levendos, a female employee of a restaurant brought a sex discrimination action against her employer. Levendos was promoted to the position of maitre'd after working as a waitress at the same restaurant for three years. She was the only female in management but she was excluded from management meetings, although males who had previously held the position of maitre'd were included in these management meetings. She was denied authority to order supplies, although a male manager was able to do so. In addition, she was falsely accused of stealing and drinking on the job, and there were rumors and remarks that she was to be replaced by a male. Her employer refused to discuss these problems with her, and wine bottles were allegedly placed in her locker to imply that she had stolen them. Levendos, 860 F.2d at 1228. This court held that such facts were sufficient to establish constructive discharge. Id. at 1233. In dicta, the court noted that the evidence presented by Levendos was even consistent with the higher subjective standard of constructive discharge, which this court has rejected. Id. at 1231. Accordingly, the court reversed the district court, finding that Levendos raised a genuine issue of material fact regarding whether she was constructively discharged from her job. Id. at 1233.
 
 
 26
 In the case at bar, the district court correctly found that the evidence was sufficient to raise a question of whether Schafer was constructively discharged. Schafer applied for a one year leave in August, 1981 and claims that he informed the Board's Assistant Personnel Director that he would be forced to resign if the leave were denied as there would be no one to care for his child. After being told that the leave was denied, he resigned on November 30, 1981. On June 23, 1982, he requested that the Board reconsider its denial of his leave. Appellees contend that the appellant acted unreasonably in resigning because he failed to choose a reasonable alternative. They suggest that the appellant failed to pursue contractual remedies as provided in Article 25 of the collective bargaining agreement; that he bypassed his bargaining representative to accomplish through the judicial process what he could have accomplished through the grievance procedure.
 
 
 27
 The district court recognized this court's adoption of the constructive discharge doctrine but erroneously concluded that "constructive discharge requires not only discrimination, but aggravating circumstances." Dist.Ct.Op. of Oct. 6, 1988 at 3-4, Appendix (App.) at 88-89. In Goss, our first clear enunciation of the constructive discharge doctrine, we did not explicitly adopt the requirement that a plaintiff show aggravating factors in order to prevail on a constructive discharge claim, although that had been required in other circuits under the reasonable person test. See, e.g., Thomas v. Douglas, 877 F.2d 1428, 1434 (9th Cir.1989) ("to establish that he was constructively discharged, a plaintiff must at least show some aggravating factors....") (citations omitted); Alicea Rosado v. Garcia Santiago, 562 F.2d 114, 120 (1st Cir.1977) ("A more drastic reduction in the quality of working conditions is needed" than mere reasonable person standard); cf. Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir.1982) (aggravating circumstances satisfied the requirements for constructive discharge).
 
 
 28
 In Levendos, this court noted that courts adopting the aggravating circumstances standard have required a "minimum threshold of discrimination ... before a court can, as a matter of law, find constructive discharge." 860 F.2d at 1232. Although in Levendos, the court noted that there were "aggravating circumstances" present, the court noted further that "we cannot state as a broad proposition of law that a single non-trivial incident of discrimination can never be egregious enough to compel a reasonable person to resign." Id. The district court erred by suggesting that constructive discharge necessarily requires evidence of aggravating circumstances.
 
 
 29
 On appeal, we cannot make the fact-finding required to determine whether it was reasonable for Schafer to resign. This fact-finding function is well within the province of the district court. Accordingly, we will remand to the district court for a factual determination of whether the "working conditions [were] so unpleasant or difficult that a reasonable person in the employee's shoes would resign" rather than attempt to resolve the problem through the grievance procedure. Goss, 747 F.2d at 888.
 
 
 30
 Part of our problem in this case is that the law belies the realities of the facts of life. Under the PDA, an employer may give limited favorable treatment to a pregnant employee while she is disabled because of pregnancy, childbirth or related medical conditions. Thus, as in Guerra, a woman could get four months of benefits, while the father would get no benefits. When we consider childrearing leave, on the other hand, the point at which childrearing leave actually begins and ends is not precise. Childrearing does not necessarily come at the end of a four month period after childbirth; in a real sense, it could start immediately after birth. The Board in the case at bar would certainly not be liable to the father under Guerra for maternity benefits or sick benefits given to female employees for pregnancy, childbirth or related medical conditions. The Board must be liable for whatever time, up to one year, a father chooses to use for childrearing if women are given the choice of selecting childrearing leave or maternity leave for up to one year, without a showing of disability related to childbirth. If mothers can have childrearing obligations immediately upon the birth of their child, then fathers also are entitled to exercise the option of using childrearing leave immediately upon the birth of their child. It does not mean that fathers are entitled to sick leave or disability benefits, but under the law, childrearing by a mother or childrearing by a father should be on the basis of full parity. The factual inquiry in each case is determining when the childrearing by the father and/or the mother begins and terminates.
 
 
 31
 If the district court finds that Schafer was constructively discharged, it shall calculate damages, considering when the childrearing benefits would have accrued and how long they would have lasted.[6] The court shall also determine whether Schafer has established or can establish the period of time that he would have stayed on leave if he had been granted the leave at the time of his initial request. Finally, the court shall determine when Schafer would have returned to work had he been granted the leave on the same basis that the leave would have been granted to a female.
 
 IV.
 The Federation's Motion to Dismiss
 
 32
 Title 42 U.S.C. Sec. 2000e-5(e) requires that a charge of an illegal employment practice "be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." Schafer was denied childrearing leave on November 20, 1981 and resigned effective December 14, 1981. The original charge against the Board was timely filed on July 13, 1982. The amended charge naming the Federation as a party was filed with the EEOC on June 20, 1984. The Federation asserts that the district court improperly denied its motion to dismiss, arguing that Schafer did not satisfy a condition precedent to bringing a Title VII action because he charged the Federation 641 days after the denial of the request for the childrearing leave.
 
 
 33
 The district court held that "because the Federation had actual notice of the administrative proceedings and because the Federation and the Board shared a commonality of interest in the provision of the collective bargaining agreement relating to child-rearing leave, naming the Board in the original charge before the EEOC is sufficient to permit Schafer to maintain a Title VII suit against the Federation." Dist. Ct. Op. of Aug. 11, 1987 at 12, App. at 68. We disagree.
 
 Statute of limitations
 
 34
 This court has followed the Supreme Court's position expressed in Zipes v. Trans World Airlines Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), that "[f]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling." See Shendock v. Director, OWCP, 893 F.2d 1458, 1463 (3d Cir.1990) (in banc). "[E]quitable tolling may be appropriate if 1) the defendant has actively misled the plaintiff; 2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or 3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." Kocian v. Getty Refining & Marketing Co., 707 F.2d 748, 753 (3d Cir.) (citing School District v. Marshall, 657 F.2d 16, 20 (3d Cir.1981)), cert. denied, 464 U.S. 852, 104 S.Ct. 164, 78 L.Ed.2d 150 (1983).
 
 
 35
 Schafer seeks to invoke the second Kocian factor for finding equitable tolling. He contends that the EEOC misled him in two respects: first, by originally drafting the charges only against the Board even though he advised the EEOC representative that he did not object to the union being named as a party; and second, by erroneously advising him that the amended charge would relate back to the initial filing date. We are not persuaded that appellant was misled. Regarding the first point, Schafer signed the charge which did not name the Federation, with the knowledge that the Federation could be named as a party. As the district court stated we "cannot conclude that Schafer was in some extraordinary way prevented from asserting his rights." Dist.Ct.Op. of Aug. 11, 1987, at 10, App. at 66. Regarding the second point, we find that the EEOC's comment that the amended charge related back could not have misled the appellant from initially charging the Federation, because the alleged comment was made subsequent to the initial filing of the charges.
 
 
 36
 A Title VII action ordinarily may be brought only against a party previously named in an EEOC action. 42 U.S.C. Sec. 2000e-5(f)(1). Nevertheless, this court recognizes an exception when the unnamed party received notice and when there is a shared commonality of interest with the named party. See, e.g., Glus v. G.C. Murphy Co., 629 F.2d 248, 251 (3d Cir.1980), vacated on other grounds, 451 U.S. 935, 101 S.Ct. 2013, 68 L.Ed.2d 321 (1981).
 
 
 37
 In Glus, this court "enumerated four factors that should be considered in determining whether the district court had jurisdiction under Title VII." Id. at 251.[7] In Glus, we agreed with the district court's conclusion that the interests of the local union were identical in all significant aspects to those of the International union, and "thus the International was not harmed by its absence from the EEOC proceedings." Id. The district court's application of Glus to the instant case is misplaced. In Glus, as we have noted, the interests of the local union and the International union were identical because
 
 
 38
 [t]heir liability [arose] from their participation in the same collective-bargaining agreements. The International was the sole signatory to the collective-bargaining agreement for a portion of the period where discrimination was found to have taken place ... [t]he International's representative was the chief union negotiator at many of the negotiation sessions.... Further, both the International and Local 940 were represented by the same attorney ... in the district court proceeding.
 
 
 39
 Id. In Goodman v. Lukens Steel Co., 777 F.2d 113, 127-28 (3d Cir.1985), aff'd, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), we affirmed the Glus exception that we will assert jurisdiction against an unnamed party when that party has notice and when there is a commonality of interest between the unnamed party and the named party. However, we declined to apply the exception in that case. We held that although the union and the employer were parties to a collective bargaining agreement, the plaintiff did not establish the requisite identity of interests between the employer and the union, where the employee originally charged the employer but neglected to charge the union in the complaint before the PHRC. 777 F.2d at 127-28. Similarly, in the instant case, Schafer failed to name the Federation in his initial complaint before the EEOC, although he named the Board. As we read Goodman, the Federation and the Board do not share the commonality of interests and notice which would make the Glus exception applicable.
 
 Indispensable party
 
 40
 Federal Rule of Civil Procedure 19(a) requires that if a party may be served and would not, if joined, deprive the court of jurisdiction, that party shall be joined if joinder is necessary for complete relief, to enable him to protect his interests relating to the action, or to guard against multiple or inconsistent judgments concerning the interests. Fed.R.Civ.P. 19(a). This record is devoid of evidence suggesting that Schafer would not be able to obtain complete relief if the Federation was not joined; the record is devoid of evidence that the Federation's absence would impede or impair its interests; and the record is devoid of evidence that the Board would be subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. Accordingly, we find that the Federation is not an indispensable party. See generally 7 Wright, Miller & Kane, Federal Practice and Procedure Sec. 1604 (2d ed. 1986). As we have noted previously, the statute of limitations has run against the Federation, and there is no basis for equitable tolling. We will therefore, reverse the district court's denial of the Federation's motion to dismiss.
 
 V.
 
 41
 For the foregoing reasons, we will reverse the district court's judgment granting the Board's summary judgment motion; we will affirm the district court's denial of Schafer's summary judgment motion; and we will reverse the district court's denial of the Federation's motion to dismiss. The case will be remanded for further proceedings consistent with this opinion.
 
 
 42
 Each party to bear its own costs.
 
 
 
 [1]
 Article 31, "Leaves of Absence Provisions" of the Collective Bargaining Agreement between Pittsburgh Board of Education and Pittsburgh Federation of Teachers provides in pertinent part:
 Maternity leave and maternity-related provisions:
 ....
 b. All female teachers shall be entitled to maternity leave, regardless of length of service.
 c. The right of female teachers to use sick leave instead of the maternity leave provisions of Subsection 3b shall continue to apply to the actual time of the disability due to childbirth and the period of recovery immediately thereafter. If this provision for the use of accumulated sick leave at the time of childbirth and any period of disability immediately preceding or following that time (or unpaid leave if the employee has exhausted all of her sick leave days) is used, the maternity leave entitlement continues not to be applicable to the involved female employee. However, leaves without Board pay for personal reasons relating to childbearing or childrearing, if they commence immediately following such sick leave absence (either paid or unpaid) due to childbirth and the period of recovery immediately thereafter, shall be available to female teachers and other female personnel. Such leaves shall not exceed one (1) year in length from the date of their inception, but may be of shorter duration as requested by the female applicant. This sick leave provision is applicable to all female personnel. No medical examination may be required by the School Board for at least six (6) weeks after the birth of the child; however, the period of absence under sick leave provisions may only be for any period of disability.
 d. Persons on maternity leave are covered under Section 5 and Section 6 of this Article. Maternity leave is limited to a maximum of one (1) year, but may be of shorter duration....
 (Emphases added).
 
 
 [2]
 Schafer claims that he did not request reinstatement in December 1981 because his resignation had been accepted and he did not believe he had the option to return to his former job. This claim must be subject to the credibility determination of the fact-finder as to the reasons for his inaction
 
 
 [3]
 Although Schafer's motion to intervene named four defendants, the complaint named only two defendants, the Board and the Federation
 
 
 [4]
 In Harness, a former employee brought a discrimination action alleging that the employer's pregnancy leave policy violated Kentucky's counterpart to the Pregnancy Discrimination Act (PDA). 42 U.S.C. Sec. 2000e(k). Female employees were permitted to take up to one year of unpaid leave for "maternity related reasons," while other employees were allowed a maximum of ninety days of unpaid sick leave for other disabilities. 877 F.2d at 1310. The Harness court concluded that this preferential treatment of pregnant employees did not violate Title VII, was permissible under the PDA, and was the kind of favorable treatment of pregnant employees which had received the specific approval of the Supreme Court. Id
 The facts of Harness can be distinguished from the facts of the instant case in that the leave in question there was limited to maternity related reasons. The case at bar does not impose a requirement that the leave be related to pregnancy. Moreover, the appellees' reference to Harness is inapposite because that case involved an interpretation of Kentucky state law.
 
 
 [5]
 The collective bargaining agreement implies that the disability period contemplated is six weeks. Article 31, Sec. 3(c) states that "[n]o medical examination may be required by the School Board for at least six (6) weeks after the birth of the child...."
 
 
 [6]
 We do not suggest that Schafer has no burden to mitigate damages. This factor must also be taken into consideration
 
 
 [7]
 The four factors were:
 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar [to] the unnamed party that for purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.
 629 F.2d at 251.