Michelle McLAUGHLIN and Tommy McLaughlin, w/h, Plaintiffs,

v.

ROSE TREE MEDIA SCHOOL DISTRICT, et. al., Defendants.

No. Civ.A. 97–5088.

United States District Court, E.D. Pennsylvania.

June 16, 1999.

Gilda L. Kramer, Philadelphia, PA, for plaintiffs.

Deborah J. Nathan, Michael I. Levin & Associates, Huntingdon Valley, PA, for defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This is an employment discrimination action brought by the plaintiffs, Michelle McLaughlin ("Michelle") and her husband Tommy McLaughlin ("Tommy") (collectively "McLaughlins") against the defendants, Rose Tree Media School District ("Rose Tree"), William T. Gamble ("Gamble"), Anthony R. Hicks ("Hicks") and Thomas K. Simpson ("Simpson") alleging claims of quid pro quo sexual harassment, hostile work environment sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et. seq.;* claims under 42 U.S.C. § 1983 and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S.A. § 951, *et. seq.;* and claims for intentional infliction of emotional distress, assault and battery and loss of consortium. Before the court is Rose Tree and Gamble's Motion for Summary Judgment pursuant to Federal Rule 56 of Civil Procedure. For the following reasons, the motion will be denied in part and granted in part.

## BACKGROUND

Michelle had been employed by Rose Tree as a custodian at Penncrest High

School ("Penncrest") from February 12, 1990 to June 5, 1998. For much of this time Hicks, Gamble and Simpson were Penncrest's principal, assistant principal and head custodian. Michelle alleges that they and others subjected her to an eight year pervasive pattern and practice of sexual harassment.

Until January 26, 1996,[1] Simpson, Michelle's immediate supervisor, allegedly sexually harassed her and other female custodians. Among some of the acts by Simpson are that: he publicly sexually assaulted female custodians by touching their breasts, buttocks, and crotch areas; made inappropriate sexual comments, including bragging about the size of his penis and sexual prowess; questioned employees about their preferred positions while engaging in sexual intercourse; kept pornographic photos in his office which he showed to female employees; and exposed himself to one female custodian. Additionally, Simpson regularly and repeatedly issued threats of retaliation and intimidation toward employees.[2] Further, Simpson gave favorably treatment to one female employee, Florence McClaren, who submitted to Simpson's sexual advances while Michelle received less favorable treatment due to her refusal of Simpson's advances.

Beginning in 1993, Michelle and other female employees complained to Gamble about Simpson's sexual harassment and the favoritism shown to Florence McClaren. However, Gamble did not stop the harassment.

Hicks made advances on Michelle and on one occasion had sexual intercourse with her. Although he continued to pursue Michelle, she rebuffed his advances. Hicks then repeatedly came to Michelle's work area to ask if her husband was away, hit her on the bottom, tried to kiss her, and told her he was "the boss."

Craig Hopkins ("Hopkins") was the head custodian after Simpson. Hopkins tried to hug Michelle and sit on her lap without Michelle's approval. Anne Callahan, Rose Tree's personnel manager concluded in a memorandum to Dr. Laird P. Warren, the Superintendent of Schools that "Hopkins did engage in some inappropriate behavior including hugging female custodians, sitting on the laps of several female custodians ..., making comments about coming to their homes which suggested that he was having a relationship with one or more of the female custodians and trying to kiss female custodians somewhere in the vicinity of their faces." (McLaughlins'.' Mem. Opp'n Mot.Summ.J.Ex. 18 at unnumbered pages 1–2).

In early 1998 Michelle was written up for infractions of work rules. At the same time Michelle found that the walls and toilets of the bathroom for which she was responsible were being smeared with feces. Michelle resigned on June 5, 1998.

On August 8, 1997 the McLaughlins filed the complaint. It was amended on May 1, 1998 and amended and supplemented on October 5, 1998 with the court's permission. The Amended and Supplemented Complaint contains nine counts. They are: Count I (Title VII Sexual Harassment— Quid Pro Quo), Count II (Title VII—Hostile Work Environment), Count III (Title VII—Retaliation), Count IV (42 U.S.C. § 1983—Equal Protection), Count V (42 U.S.C. § 1983—First Amendment), Count VI (Pennsylvania Human Relations Act), Count VII (Intentional Infliction of Emotional Distress), Count VIII (Assault and Battery), and Count IX (Loss of Consortium). Rose Tree is a defendant in Counts I to VI. Gamble is a defendant in Counts IV, V, VI, VII and IX. Both parties move for summary judgment.

1. Simpson was suspended by Rose Tree on January 26, 1996.

2. Most of these facts are undisputed against Simpson as they were part of factual findings made by defendant Rose Tree when it investigated Simpson's conduct in 1996. *See* (Amended and Supplemented Complaint Ex. A). Rose Tree's investigation resulted in the termination of Simpson.

*I. Summary Judgment Standard*

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Our responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 · L.Ed.2d 202 (1986). The presence of "a mere scintilla of evidence" in the nonmovant's favor will not avoid summary judgment. *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505). Rather, we will grant summary judgment unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. 2505. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990) (*citing Celotex Corp. v. Catrett,* 477 U.S.

317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

*II. Title VII Sexual Harassment Claims*

 Rose Tree moves for summary judgment on the Title VII sexual harassment claims (Counts I and II) alleging that because Simpson directed conduct of a sexual nature to men and women alike, Michelle has failed to show she suffered intentional discrimination because of her sex. A showing of intentional discrimination on the basis of sex is required for hostile work environment sexual harassment claims,[3] but not for quid pro quo sexual harassment claims.[4] This requirement is satisfied as a matter of course in cases involving sexual propositions, innuendo, pornographic materials, or sexual derogatory language. *See Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 n. 3 (3d Cir.1990). Here evidence of such conduct abounds. For example, Rose Tree dismissed Simpson in part because he sexually assaulted female employees, conveyed sexual comments to and about female employees under his supervision and issued threats of retaliation and/or intimidation toward employees under his supervision. *See* (Amended and Supplemented Complaint Ex. A at 6–8, 11). Moreover, Rose Tree never addressed the conduct of Hicks or Hopkins in its motion. Therefore, Rose Tree cannot establish the absence of a genuine issue of material fact here.

*III. Title VII Retaliation Claim*

 Rose Tree moves for summary judgment on the Title VII retaliation claim

---

**3.** The requirements for hostile work environment sexual harassment claims are: "(1) the employees suffered intentional discrimination because of their sex; ... (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability." *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir.1990).

**4.** The requirements for quid pro quo sexual harassment claims are: (1) the submission to

unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature is made either explicitly or implicitly a term or condition of employment or (2) submission to or rejection of such conduct is used as the basis for employment decisions affecting the plaintiff. *See Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1296 (3d Cir.1997). Since Rose Tree did not address these requirements, Rose Tree clearly cannot establish the absence of a genuine issue of material fact as to the quid pro quo sexual harassment claim.

(Count III) arguing that Michelle's sworn testimony indicates she has no evidence to substantiate her allegation that she was subjected to retaliation by Gamble and other employees of the School District. Rose Tree, however, addressed only the conduct of Gamble and failed to discuss the conduct of Simpson, Hopkins or Hicks. Therefore, Rose Tree cannot show the absence of a genuine issue of material fact here.

## IV. Law of the Case Doctrine

 Rose Tree and Gamble move for summary judgment on the 42 U.S.C. § 1983 claims (Counts IV and V) alleging that they are subsumed under Title VII. The identical argument was previously considered and rejected. *See McLaughlin v. Rose Tree Media School District,* 1 F.Supp.2d 476, 479–80 (E.D.Pa.1998). Under the law of the case doctrine, issues decided in earlier stages of the same litigation should not be reopened. *See Agostini v. Felton,* 521 U.S. 203, 236, 117 S.Ct. 1997, 2017, 138 L.Ed.2d 391 (1997). The doctrine does not apply if the court is "convinced that (its prior decision) is clearly erroneous and would work a manifest injustice." *Arizona v. California,* 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 1391 n. 8, 75 L.Ed.2d 318 (1983). The U.S. Court of Appeals for the Third Circuit has recognized three extraordinary circumstances that warrant a court's reconsideration of a prior decision: "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Public Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 117 (3d Cir.1997). There are no extraordinary circumstances that warrant the court's reconsideration of its prior decision.

## V. Statute of Limitations

 Gamble moves for summary judgment on the 42 U.S.C. § 1983 claims (Counts IV and V) arguing that they are barred by the statute of limitations. Federal courts apply the state's statute of limitations for personal injury to 42 U.S.C. § 1983 actions. *See Wilson v. Garcia,* 471 U.S. 261, 276–78, 105 S.Ct. 1938, 1947–48, 85 L.Ed.2d 254 (1985); *Sameric Corp. of Delaware v. City of Philadelphia,* 142 F.3d 582, 599 (3d Cir.1998). Since Pennsylvania's statute of limitations for personal injury is two years, *see* 42 Pa.Cons.Stat.Ann. § 5524 (West Supp.1998), Michelle's 42 U.S.C. § 1983 claims are subject to a two-year statute of limitations. *See Osei–Afriyie v. Medical College of Pennsylvania,* 937 F.2d 876, 885 (3d Cir.1991). However, the statute of limitations is tolled if the plaintiff demonstrates that at least one discriminatory or retaliatory act occurred within the filing period and the harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination." *West v. Philadelphia Elec. Co.,* 45 F.3d 744, 754 (3d Cir.1995) (quoting *Jewett v. International Tel. and Tel. Corp.,* 653 F.2d 89, 91 (3d Cir.), *cert. denied,* 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981)).

 The McLaughlins filed suit on August 8, 1997. Michelle's claims are based in part on Simpson's acts before he was suspended on January 26, 1996 and Gamble's knowledge and acquiescence of them. Since some of these acts occurred within the filing date and were not isolated or sporadic, *see* (Amended and Supplemented Complaint Ex. A), the statute of limitations is tolled here.

## VI. Liability of Gamble Under 42 U.S.C. § 1983

 Gamble moves for summary judgment on the 42 U.S.C. § 1983 claims (Count IV and V) arguing that Michelle failed to establish that: (1) Gamble acted with deliberate indifference to the consequences and established and maintained a policy, practice or custom which directly caused her constitutional harm, and (2) there was affirmative conduct by Gamble. Gamble is correct that "[s]upervisory lia-

bility cannot be based solely upon the doctrine of respondeat superior" and that "there must be some affirmative conduct by the supervisor that played a role in the discrimination." *Andrews*, 895 F.2d at 1478 (citing *Rizzo v. Goode*, 423 U.S. 362, 377, 96 S.Ct. 598, 607, 46 L.Ed.2d 561 (1976)). "The necessary involvement can be shown in two ways, either 'through allegations of personal direction or of actual knowledge and acquiescence,' *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988), or through proof of direct discrimination by the supervisor." *Andrews*, 895 F.2d at 1478.

In *Andrews*, the U.S. Court of Appeals for the Third Circuit found that a supervisor who "was aware of the problems concerning foul language and pornographic materials but did nothing to stop them;" who "took no measures to investigate the missing case problems" of the female officers when the male officers were not experiencing the same problems; and who displayed a "boys will be boys" attitude toward the sexual harassment could be found to have acquiesced in the sexual discrimination of the female officers. *Id.* at 1479. Another supervisor in *Andrews* who was similarly aware of the sexual harassment was also found to have condoned the actions of the male colleagues. *Id.; see also Stoneking v. Bradford Area School District*, 882 F.2d 720, 730 (3d Cir. 1989) (holding "mere failure of supervisory officials to act or investigate cannot be basis of liability," but such officials could not "with impunity maintain a custom, practice or usage that communicated con-

donation or authorization of assaultive behavior").

■ If the testimony of several custodians is believed, *see* (McLaughlins' Mem. Opp'n Mot.Summ.J.Ex. 21 at 16, 19–21), complaining to Gamble about Simpson's conduct was like "letting the fox into the chicken coop." This testimony indicates that Gamble knew of Simpson's behavior, told Simpson about the complaints and did nothing to stop it or prevent Simpson's retaliation for the complaints. *See Id.* Such evidence is sufficient to qualify as "acquiescence" to support a claim for supervisor liability under 42 U.S.C. § 1983.

### VII. PHRA Claims Against Gamble

■ Gamble argues that the court does not have jurisdiction over the PHRA claim against Gamble in Count VI of the Amended and Supplemented Complaint because Michelle did not name him as a defendant or specifically make allegations against him in the PHRA charge. Michelle responds that Gamble is in no way prejudiced by not being named in the administrative proceeding. Relying on *Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir.1980), *judgment vacated on other grounds sub nom., Retail Wholesale and Dept. Store Union v. G.C. Murphy Co.*, 451 U.S. 935, 101 S.Ct. 2013, 68 L.Ed.2d 321 (1981), she argues that because a number of the *Glus* factors are applicable and satisfied, the purposes behind requiring naming are met.[5]

Title VII actions ordinarily may be brought only against a party previously named in an EEOC action.[6] *See* 42 U.S.C.

---

5. Michelle argues that the *Glus* exception applies because Michelle is not an attorney or one sophisticated in the technical procedural requirements of litigation; the interests of Gamble and Rose Tree Media are sufficiently similar that the absence of Gamble would not have hampered the conciliation and compliance procedures; that Gamble has not shown how he is in any way prejudiced by not being specifically named in the PHRA charge; Gamble has represented to McLaughlin that his relationship with her is to be through Rose Tree; and Gamble is represented by the

same counsel who represented Rose Tree before the Pennsylvania Human Relations Commission ("PHRC") and who represents them both in the instant action. *See Glus*, 629 F.2d at 251.

6. This is a jurisdictional prerequisite to institution of suit against that party. *See Carter–Herman v. City of Philadelphia*, Civ. A. No. 95–4030, 1995 WL 764574 (E.D.Pa. Dec.21, 1995).

§ 2000e–5(f)(1). Although the PHRA does not contain an analogous requirement, courts have held that the PHRA should be interpreted consistently with Title VII. *See Glickstein v. Neshaminy School Dist.,* No. CIV. A. 96–6236, 1997 WL 660636 at *10 (E.D.Pa. Oct.22, 1997) (applying jurisdictional requirement of EEOC to PHRA); *see also Carter–Herman v. City of Philadelphia,* Civ. A. No. 95–4030, 1995 WL 764574, *3 (E.D.Pa. Dec.21, 1995). The purpose of requiring a defendant to be named in the EEOC or PHRA claim is to give that defendant notice of the allegations against it such that the party has an opportunity to resolve the situation without resort to further litigation. *See Timmons v. Lutheran Children,* No. CIV. A. 93–4201, 1993 WL 533399, at *3 (E.D.Pa. Dec.17, 1993). In keeping with the purpose of the rule, the U.S. Court of Appeals for the Third Circuit has recognized an exception for situations where the unnamed party has received notice of the allegations and where there is sufficient commonality of interests between the named and unnamed parties. *See Schafer v. Board of Public Education,* 903 F.2d 243, 252 (3d Cir.1990); *Glus,* 629 F.2d at 251.

In applying the *Glus* exception, several members of this Court have determined that where a defendant is not named as a defendant in the caption of the administrative proceeding, but is named in the body of the complaint, that defendant has sufficient notice to satisfy the general rule. *See, Glickstein,* 1997 WL 660636 at *11; *Timmons,* 1993 WL 533399 at *4. At least one other member of the Court has determined that in as much as the plaintiff is bringing a claim against a defendant in the defendant's official capacity, then lack of being named in the administrative complaint was of no consequence as the official capacity is merely another way of reaching the entity. *See Duffy,* 1995 WL 299032 at *2.

Here Gamble was named in neither the caption nor the body of Michelle's complaint to the PHRA. *See* (Amended and Supplemented Complaint Ex. B). Although Gamble allegedly committed discriminatory acts attributable to Rose Tree, the administrative complaint failed to describe this conduct or assert that the conduct was part of the discrimination by Rose Tree.

However, Michelle did file the PHRA complaint *pro se.* Moreover, there is evidence that Gamble's conduct was under review by the Pennsylvania Human Relations Commission because Gamble's alleged knowledge of and aquiescence in Simpson's actions was discussed at a fact-finding conference before the PHRC. *See* (McLaughlins' Mem. Opp'n Summ. J.Mot.Ex. 39, Tommy's Aff.)

Gamble was sued in both his personal and official capacity. (Amended and Supplemented Complaint ¶ 108). Personal capacity claims expose individual defendants to personal liability. *See Duffy v. Southeastern Pa. Transp. Co.,* No. CIV. A. 94–4260, 1995 WL 299032 at *2 (E.D.Pa. May 12, 1995). In contrast, official capacity claims only impute liability to the individual defendants' principal. *See Id.* Since Gamble initially had no indication that his conduct was being formally reviewed, the personal capacity claims against Gamble fail to satisfy the notice requirements for bringing a PHRA complaint. However, because: (1) there is no distinction between Rose Tree and Gamble in his official capacity as the assistant principal at Penncrest and (2) Rose Tree learned of the allegations of Gamble's misconduct at a fact-finding conference related to the PHRA complaint, *see* (McLaughlins' Mem. Opp'n Mot.Summ.J.Ex. 39, Tommy's Aff.), the failure to name Gamble in the PHRA complaint does not preclude Michelle from asserting official capacity claims against Gamble.

*VIII. Gamble's Immunity*

 Gamble moves for summary judgment on all counts against him arguing that he, as a public official is immune from

liability under the common law and Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.Cons.Stat.Ann. § 8541 et seq. (1998). The PSTCA provides a comprehensive statutory framework for analyzing official immunity claims by local governmental agencies and their employees. *See Centennial School District v. Independence Blue Cross,* 885 F.Supp. 683, 689–90 (E.D.Pa.1994); *Weinstein v. Bullick,* 827 F.Supp. 1193, 1205–07 (E.D.Pa.1993). An employee of a local agency, such as Gamble here, is entitled to immunity, *see* 42 Pa.Cons.Stat.Ann. § 8545 (1998), so long as the harm was not caused by the employee's willful misconduct. *See* 42 Pa.Cons.Stat.Ann. § 8550 (1998). In other words, an employee remains personally liable for intentional torts. In addition, the PSTCA has no force when applied to 42 U.S.C. § 1983 suits. *See Wade v. City of Pittsburgh,* 765 F.2d 405, 407 (3d Cir.1985). Since Michelle brought only such claims, Gamble is not entitled to immunity here.

## IX. Constructive Discharge Claims

 Rosetree and Gamble move for summary judgment on the allegations that Michelle was constructively discharged from employment when she resigned on June 5, 1998 arguing that: (1) the allegations of misconduct do not amount to conduct so intolerable that a reasonable person would be forced to resign, and (2) Rosetree was not given an opportunity to redress the situation. A claim for constructive discharge is established by showing that the employer knowingly permitted conditions of discrimination in employment "so intolerable that a reasonable person would be forced to resign." *Levendos v. Stern Entertainment, Inc.,* 860 F.2d 1227, 1232 (3d Cir.1988) (*Levendos I*), quoting *Goss v. Exxon Office Systems Co.,* 747 F.2d 885, 887 (3d Cir.1984). To make this showing, more than subjective perceptions of unfairness or harshness or a stress-filled work environment are required. *See Clowes v. Allegheny Valley Hospital,* 991 F.2d 1159, 1162 (3d Cir.), *cert. denied,* 510

U.S. 964, 114 S.Ct. 441, 126 L.Ed.2d 374 (1993); *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1083 (3d Cir.1992). However, the U.S. Court of Appeals for the Third Circuit has held that a constructive discharge may exist "when the employer is aware that the employee has been subjected to a continuous pattern of harassment and the employer does not take any action to stop it." *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1084–85 (3d Cir. 1996).

 Here Michelle has produced evidence to show that she was subjected to a continuous pattern of harassment from Simpson and later from Hopkins. *See* (McLaughlins' Mem. Opp'n Mot. Summ.J.Ex. 18 at unnumbered pages 1–2); (Amended and Supplemented Complaint Ex. A). Moreover, there is evidence to indicate that Rose Tree and Gamble were aware of this pattern of harassment. *See Id.;* (McLaughlins' Mem. Opp'n Mot. Summ.J.Ex. 21 at 16, 19–21). Finally, evidence exists to show that no action was taken to stop the pattern of harassment. *See* (McLaughlins' Mem. Opp'n Mot. Summ.J.Ex. 18 at unnumbered pages 1–2; Ex. 21 at 16, 19–21); (Amended and Supplemented Complaint Ex. A). Consequently, the court cannot say as a matter of law that the pattern of abuse Michelle alleges would not enable the jury to find that she was constructively discharged.

## X. Intentional Infliction of Emotional Distress Claim Against Gamble

 Gamble moves for summary judgment on the intentional infliction of emotional distress claim (Count VII) alleging that his conduct subject to this suit was not sufficiently "outrageous." Michelle's claim for intentional infliction of emotional distress is governed by the law of Pennsylvania. The Pennsylvania courts, which have recognized the tort of intentional infliction of emotional distress, have nevertheless approached this area of law cautiously, particularly in the employ-

ment context. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1486 (3d Cir. 1990). In order to state a cognizable claim, the conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988). Moreover, in the employment context, "sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress." *Andrews*, 895 F.2d at 1487. According to *Andrews*, the "extra factor that is generally required is retaliation for turning down sexual propositions." *Id. But see Solomon v. City of Philadelphia*, 1996 WL 20651, *3–*4 (E.D.Pa.) (finding that the case law does not restrict the retaliatory conduct "only to retaliation for refusing direct sexual propositions").

Michelle argues that the evidence of Gamble's alleged knowledge and acquiescence of Simpson's conduct is sufficient for an intentional infliction of emotional distress claim. She is wrong. It is clear that this evidence alone falls considerably short of the requisite outrageousness.

## XI. *Loss of Consortium Claim Against Gamble*

 Gamble moves for summary judgment on the loss of consortium claim (Count IX) contending that Tommy and Michelle's marital problems were not due to Gamble's conduct. "A loss of consortium claim arises from the marriage relationship and is grounded on the loss of a spouse's services after injury." *Tiburzio–Kelly v. Montgomery*, 452 Pa.Super. 158, 681 A.2d 757, 772 (1996). When a defendant injures a married individual, his spouse may recover for the deprivation of whatever "aid, assistance, comfort, and so-

ciety [one spouse] would be expected to render or bestow upon [the other]." *Burns v. Pepsi–Cola Metro., Bottling Co.*, 353 Pa.Super. 571, 510 A.2d 810, 812 (1986) (quoting *Hopkins v. Blanco*, 224 Pa.Super. 116, 302 A.2d 855, 856 (1973), *aff'd* 457 Pa. 90, 320 A.2d 139 (1974)). Because there is evidence that Tommy suffered a loss of Michelle's society and services as a result of the alleged discriminatory activity at Penncrest which would include Gamble's conduct in his official capacity, *see* (McLaughlins' Mem. Opp'n Mot. Summ.J.Ex. 41 at 2–4), the loss of consortium claim will not be dismissed.

## VII. *Punitive Damages*

 Gamble moves for summary judgment on the requests for punitive damages contending that the plaintiffs have failed to establish the outrageousness of Gamble's conduct to entitle them to punitive damages.[7] The request for punitive damages under the PHRC claim has been withdrawn in light of the decision of the Pennsylvania Supreme Court in *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745, 751 (1998). Punitive damages requests remain for the 42 U.S.C. § 1983 and the loss of consortium claims against Gamble. Punitive damages are available in 42 U.S.C. § 1983 actions "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Assessment of punitive damages is proper when a person's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct, *see Pittsburgh Outdoor Adv. Co. v. Virginia Manor Apts., Inc.*, 436 Pa. 350, 260 A.2d 801 (1970), and are awarded to punish that person for such conduct. *See Feingold v. Southeastern*

---

7. Rose Tree also moves for summary judgment here. However, the court already dismissed the punitive damages claims against Rose Tree in its order and memorandum of

22, April 1998. *See McLaughlin v. Rose Tree Media School District*, 1 F.Supp.2d 476, 479–80 (E.D.Pa.1998).

*Pa. Transp. Auth.,* 512 Pa. 567, 517 A.2d 1270, 1276 (1986).

■■■ The McLaughlins argue that, as in *Feldman v. Philadelphia Hous. Auth.,* 43 F.3d 823, 833 (3d Cir.1994), it should be for the jury to decide whether Gamble's conduct involved reckless indifference. The Feldman case, however, is distinguishable. The court in *Feldman* determined that the record contained evidence from which a reasonable jury could reasonably have concluded that the defendant not only knew about and acquiesced in, but also directed the violative conduct. *See Feldman,* 43 F.3d at 833. Here there is no evidence that Gamble directed Simpson to act as he did. The evidence of Gamble's knowledge and acquiescence of Simpson's conduct alone is insufficient to show the requisite outrageousness for requests for punitive damages against Gamble.

*VIII. Conclusion*

An appropriate Order follows.

**ORDER**

AND NOW, this 16th day of June, 1999, upon consideration of Defendants'[8] Motion for Summary Judgment and Plaintiffs' Response thereto, it is hereby ORDERED that, in accordance with the foregoing Memorandum, the Motion is DENIED IN PART and GRANTED IN PART as follows:

1) Defendant Rose Tree's Motion for Summary Judgment on Counts I, II, III, IV, V and VI is DENIED;

2) Defendant Gamble's Motion for Summary Judgment on Counts IV, V and IX is DENIED;

3) Defendant Gamble's Motion for Summary Judgment on Count VI is GRANTED as to personal capacity and DENIED as to official capacity;

4) Defendants' Motion for Summary Judgment on the constructive discharge claims is DENIED;

5) Defendant Gamble's Motion for Summary Judgment on Count VII is GRANTED;

6) Defendant Gamble's Motion for Summary Judgment on the punitive damages claims is GRANTED.

---

8. "Defendants" refers to Rose Tree and Gamble.