**Suzanne J. GOSS, Appellant in No. 83–1598**

v.

**EXXON OFFICE SYSTEMS COMPANY, Appellant in No. 83–1557.**

**Nos. 83–1557, 83–1598.**

United States Court of Appeals, Third Circuit.

Argued Aug. 6, 1984.

Decided Nov. 7, 1984.

---

Alan M. Lerner (argued), Jeffrey Ivan Pasek, Manya L. Kamerling, Philadelphia, Pa., for appellant/cross-appellee, Suzanne

J. Goss; Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., of counsel.

Frank H. Wright (argued), Grand & Estrow, New York City, Walter M. Phillips, Jr., Philadelphia, Pa., Charles Beck, Exxon Enterprises, New York City, for appellee/cross-appellant, Exxon Office Systems Co.

Before SEITZ, GIBBONS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

Suzanne Goss appeals from a judgment in her favor in her suit charging her former employer, Exxon Office Systems Company [Exxon] with sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. (1976). She contends that the judgment in her favor, totaling $101,961.02, is inadequate. Exxon cross-appeals, conceding that Goss was subjected to sex discrimination, but contending that the trial court erred, factually and legally, in concluding that such discrimination amounted to a constructive discharge, and in determining the amount of her damages. We affirm.

### I.

#### Constructive Discharge

This court has not heretofore considered whether acts of discrimination in violation of Title VII can make working conditions so intolerable that a reasonable employee would be forced to resign. Classifying a termination as a constructive discharge rather than a voluntary quit has significant ramifications with respect to the scope of relief. The constructive discharge doctrine was first developed under the National Labor Relations Act, and is in that branch of labor law well established. *See, e.g., NLRB v. Tricor Products, Inc.*, 636 F.2d 266, 271 (10th Cir.1980); *J.P. Stevens & Co., Inc. v. NLRB*, 461 F.2d 490, 494–95 (4th Cir.1972); *NLRB v. Century Broadcasting Corp.*, 419 F.2d 771 (8th Cir.1969); *Bausch & Lomb Optical Co. v. NLRB*, 217 F.2d 575, 577 (2d Cir.1954); *NLRB v. Saxe-Glassman Shoe Corp.*, 201 F.2d 238, 243 (1st Cir.1953). The courts of appeals which have addressed the question have recognized the appropriateness of its application to the branch of labor law encompassed in Title VII. *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983); *Irving v. Dubuque Packing Co.*, 689 F.2d 170, 173–74 (10th Cir.1982); *Nolan v. Cleland*, 686 F.2d 806, 812–15 (9th Cir.1982); *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982); *Clark v. Marsh*, 665 F.2d 1168, 1174–76 (D.C.Cir.1981); *Meyer v. Brown & Root Const. Co.*, 661 F.2d 369, 372 (5th Cir.1981); *Welch v. University of Texas and Its Marine Science Institute*, 659 F.2d 531, 533–34 (5th Cir.1981); *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir.1981); *Pittman v. Hattiesburg Municipal Separate School District*, 644 F.2d 1071, 1077 (5th Cir.1981); *Bourque v. Powell Electrical Mfg. Co.*, 617 F.2d 61, 65 (5th Cir.1980); *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir.1977); *Jacobs v. Martin Sweets Co., Inc.*, 550 F.2d 364, 369 (6th Cir.), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977); *Thompson v. McDonnell Douglas Corp.*, 552 F.2d 220, 223 (8th Cir.1977); *Muller v. United States Steel Corp.*, 509 F.2d 923, 929 (10th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975).

But while the application of the constructive discharge doctrine to Title VII cases has received apparently universal recognition among the courts of appeals which have addressed that issue, there is a divergence of opinion as to the findings necessary for such application in specific instances. The Eighth Circuit Court of Appeals in *Johnson v. Bunny Bread Co.*, *supra*, and the Tenth Circuit Court of Appeals in *Muller v. United States Steel Co.*, *supra*, appear to have required a finding that the discrimination complained of amounted to an intentional course of conduct calculated to force the victim's resignation. Other courts have adopted an objective standard, requiring no more than a finding that the conduct complained of

would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign. *E.g. Held v. Gulf Oil Co., supra; Bourque v. Powell Electrical Mfg. Co., supra; Jacobs v. Martin Sweets Co., Inc., supra.* We hold that no finding of a specific intent on the part of the employer to bring about a discharge is required for the application of the constructive discharge doctrine. The court need merely find that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.

Exxon contends that the trial court's finding of fact that Goss was constructively discharged is clearly erroneous. We conclude that it is not.

Goss, a married woman, was a successful sales representative for Exxon, with an attractive territory in Montgomery County, Pennsylvania. She was responsible for major accounts including Merck, Sharp & Dohme and McNeil Pharmaceuticals. In the spring of 1980 her supervisor, Robert Melchionni, interrogated her about whether she intended to have a family. She indicated the intention to have both a family and a career. Shortly thereafter she became pregnant, and Melchionni expressed his doubts about her ability to combine motherhood and a career. In July of 1980, Goss suffered a miscarriage, but returned to work with no loss of working time. In October 1980 she became pregnant again. In December of that year, after obtaining a large order from Merck, Sharp & Dohme, she had a meeting with Melchionni, who was verbally abusive, and who indicated that he was thinking of removing her from the Merck account. At the same meeting he questioned her further about the dual responsibilities of a career and motherhood, to such an extent that she began crying.

On December 23, 1980, Goss suffered a second miscarriage. She was ill for two weeks, but because of the year-end holidays missed only six work days. When she reported to work on January 5, 1981, she was told that she no longer would have her usual territory, but was being replaced by Richard Slaughter. Goss objected to the transfer, and pursued her complaint to higher levels in Exxon, in accordance with that company's "open door" policy. After several meetings she was given a new territorial assignment, and was told to either sign a writing accepting that assignment or resign.

The court found that Richard Slaughter had been promised a lucrative sales territory as part of an inducement for the transfer of Slaughter's wife, Lisa, also an Exxon employee, from Houston, Texas, to Philadelphia. The court also found that there were two available lucrative territories: one serviced by Tom Katona, and the other serviced by Goss. When Melchionni was asked to find a territory for Slaughter, he described Goss as a "wacko," pregnant, and likely to leave. He was thereupon instructed to transfer Goss. These findings are amply supported by the credited testimony of Richard Lucia, an Exxon employee. On the basis of these findings the court concluded that in order to make room for Slaughter, the company sacrificed Goss rather than Katona, a male, and that this decision was based on Goss' sex and pregnancy. That conclusion must be accepted here. *Pullman Standard Co. v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982).

Applying the objective, reasonable person test of which we approve, the court found that Goss was constructively discharged. The court found:

It is important in this regard to note the nature of plaintiff's work. A positive mental attitude is essential to a sales representative's performance, as the representative must be able to sell the employer's products and the employer's image to the public with confidence. By the end of the series of events described in the foregoing findings, plaintiff's confidence in herself and her employer was shattered. Also, plaintiff's compensation was based mostly on commissions, so that an offer of an inferior substitute territory was not simply an offer of infe-

rior working conditions but of a substantial cut in pay. Plaintiff's efforts to obtain just treatment through defendant's "open door" policy only made matters worse, as she encountered hostility and intimidation tactics at each successive level of management. For plaintiff, EOSC's "open door" led directly to the street.

These findings are legally sufficient. They are, moreover, based upon credibility judgments. The court heard both the Exxon and the Goss witnesses, and credited the latter. It is clear, therefore, that Goss was entitled to a remedy not only for pre-termination sexual discrimination, but also for wrongful termination of her employment.

## II. Liability for Back Pay

Goss submitted her resignation to Exxon on February 9, 1981, effective February 28, 1981. By April 13, 1981, she had found employment, at a lower income, with Data Point Corporation. She left Data Point at the end of May, 1982 to work for Agency Automation Services in June, still at a lower income level than at Exxon. Finally, in January, 1983, she obtained her present employment with Hewlitt Packard Corporation. The court calculated a back pay award of $78,454.23. Included in that award are lost commissions between January 5, 1981 and February 23, 1981, when she was on Exxon's payroll without a new territory. The court also found that she incurred $850 in compensable job search expenses as a result of Exxon's constructive discharge. Finally, the court found that Goss' estimate that she would have earned $117,165.71 in commissions between February 24, 1981 and June 30, 1983 was fair and reasonable. From these sums were deducted her actual earnings, from February 24, 1981 through June 30, 1983 of $55,554.47, for a net back pay award of $78,454.23, to which was added prejudgment interest at 12% per annum.

■ Exxon objects to the foregoing calculation on two grounds. First, Exxon disputes the court's selection of 1981 as the base year for calculating her likely earnings, because in that year sales territories had to be reassigned as a result of a reorganization. Exxon therefore urges that some average from prior years should have been utilized. We reject this contention. The risk of lack of certainty with respect to projections of lost income must be borne by the wrongdoer, not the victim. *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931). Exxon failed to convince the factfinder that its lower projection was reasonable. Exxon also maintains that the court erred in rejecting its contention that Goss had failed to mitigate damages. The contention is in part predicated on Exxon's objection to the court's constructive discharge finding, which we have affirmed. Exxon argued that Goss failed to mitigate damages by removing herself from consideration for a position with Lexitron, which might have paid more than her projected earnings with Exxon, prior to accepting employment at Data Point Corporation. The court found that Exxon, which had the burden of proof on mitigation, failed to prove that she would have earned more at Lexitron or that she ought to have gone to work there despite personal misgivings about that company. These findings are not clearly erroneous.

Thus we conclude that the judgment against Exxon for $78,454.23 in back pay, through June 30, 1983, plus interest, must be affirmed.

## III. Front Pay

■ Goss also sought, in lieu of reinstatement, what in Title VII litigation has been commonly referred to as front pay: that is, an award for a reasonable future period required for the victim to reestablish her rightful place in the job market. Goss sought such an award through the end of 1987. Exxon contended that no such award should be given. The trial court concluded that a front pay award should be limited to the four month period between June 30, 1983 and the time she would be sent out into the field as a sales representative for her current employer, Hewlitt Packard Corporation. The court awarded

the difference between her present base pay and the estimated top earnings of Hewlitt sales representatives, a sum of $12,523.20. Both Exxon and Goss object to this award.

### (1) *Exxon's Objection to Front Pay*

Exxon urges that the court erred both factually and legally in awarding front pay. Exxon's factual argument, however, is predicated upon the same objections about mitigation of damages which we have rejected in Part II, *supra.* We need not discuss them further here.

The award of future lost earnings in Title VII cases is an alternative to the traditional equitable remedy of reinstatement. *See White v. Carolina Paperboard Corp.,* 564 F.2d 1073, 1091 (4th Cir.1977); *United States v. Lee Way Motor Freight, Inc.,* 625 F.2d 918, 949–50 (10th Cir.1979). The choice of such a remedy in lieu of an order that the plaintiff be reinstated rests in the sound discretion of the trial court. *Dillon v. Coles,* 746 F.2d 998 (3d Cir.1984). The trial court explained:

I do not believe that either plaintiff or defendant would seriously contend that it would be sensible to order plaintiff reinstated to a job in which harmonious working relationships are so important after the acrimony this case has engendered, nor could I possibly draft an injunctive order that would effectively make the existing ill feelings disappear. I will therefore consider plaintiff's front pay claim.

The court applied correct legal standards— the likelihood of continuing disharmony in a sensitive job and the difficulty of policing an ongoing relationship—and we find no abuse of discretion in the choice of remedy.

### (2) *Goss' Objection to the 4 Month Limitation*

Goss contends that the trial court erred in limiting the front pay remedy to four months. She urges that this limitation requires her to bear the risk that with her new employer's products she will be less successful in the marketplace than she had been with Exxon. In justifying the limitation, the court observed:

I believe it would require excessive speculation to make such an award for the period claimed in this case, for the following reasons. Compensation in the sales business depends on a number of factors other than the individual salesperson's ability. A variety of economic factors affect customers' ability and willingness to buy; competing companies develop new technology at different rates. It is possible to compute plaintiff's lost back pay with a reasonable degree of certainty by comparing her actual earnings to the actual earnings of defendant's more successful sales representatives during the same period of time. The actual earnings of those representatives for the years in question demonstrate how much even a top-flight sales person's compensation can vary from one time period to another. There is no evidence from which I can make a reasonable projection of how defendant's business will do relative to that of plaintiff's current employer over the coming years. Moreover, I am asked to award front pay through the end of 1987 on the basis of plaintiff's conclusory statement that it will take her that long to reach her rightful place by staying with her current employer. No foundation was laid in the evidence for this statement. For all I know, the number was based on sheer guesswork. Finally, in November of this year, plaintiff will be going out into the field for her current employer and will begin earning commissions. If she does well—and there is every reason to believe she will do superbly—her earnings may soon meet or exceed the best she might have obtained by staying with the defendant.

To the extent that these observations are factual, the court's findings are not clearly erroneous. In selecting a cut-off date for an equitable front pay remedy the court exercises discretion. We find no abuse of that discretion.

Thus we conclude that the judgment awarding Goss $12,523.20 in front pay in lieu of reinstatement must be affirmed.

#### IV. Conclusion

In both appeals the judgment appealed from will be affirmed.