

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-17-2005

# Angeloni v. Diocese of Scranton

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4501

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Angeloni v. Diocese of Scranton" (2005). *2005 Decisions.* Paper 1445.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1445

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 03-4501

———————

MARGARET M. ANGELONI

v.

THE DIOCESE OF SCRANTON;
VILLA ST. JOSEPH; HAZZOURI

Margaret Angeloni,
                    Appellant

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
D.C. Civil No. 02-cv-00276
District Judge:  The Honorable A. Richard Caputo

———————

Submitted Under Third Circuit LAR 34.1(a)
February 7, 2005

———————

Before: BARRY, FUENTES, and BECKER, <u>Circuit Judges</u>

———————

(Opinion Filed: March 17, 2005)

———————

OPINION

———————

BARRY, <u>Circuit Judge</u>

On February 20, 2002, Margaret M. Angeloni brought a sexual harassment and retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, against the Diocese of Scranton, Villa St. Joseph, and Reverend Alex Hazzouri (collectively "appellees"). The District Court granted appellees' motion for summary judgment on October 22, 2003 and dismissed the state law claims. A timely appeal followed. We have jurisdiction under 28 U.S.C. § 1291. For the reasons that follow, we will affirm.

## I. Factual Background

As we write only for the parties, we will confine our discussion to those facts relevant to the instant disposition. Angeloni worked as a dining room and kitchen server at Villa St. Joseph, a home for priests in Pennsylvania, from August of 1996 until January 19, 1998. She was fourteen and fifteen years old. Reverend Hazzouri allegedly began touching her inappropriately a few months after she began working at Villa St. Joseph. She estimated that the touching occurred at least ten times, and always the same way – when she was waiting on Reverand Hazzouri's table, his right hand would come into contact with her left thigh.

In May or June of 1997, Angeloni told her supervisor, Annette Balint, about the touchings, and then in July of 1997, Angeloni told her parents. Also in July, Angeloni's mother had a meeting with Ms. Balint; by that time, Ms. Balint had spoken with Bishop John M. Dougherty, the rector at Villa St. Joseph. Both Ms. Balint and Bishop

2

Dougherty talked to Angeloni's co-workers and to Reverend Hazzouri, and all denied that any inappropriate touching took place. Based on these discussions, they suggested that Angeloni simply stop serving Reverend Hazzouri's table so that she could avoid any discomfort.[1] Bishop Dougherty also met with her parents that summer, and tried to reassure them that steps were being taken to make sure that Angeloni was not in any danger.

No further touching took place, but Angeloni stated that in December of 1997, Reverend Hazzouri approached her and told her he was worried about what she had said about him. Angeloni said she was intimidated, and told her parents.

On December 17, 1997, Angeloni's mother met again with Bishop Dougherty and expressed concerns for her daughter's safety. Bishop Dougherty replied that he did not think there was cause for concern, but added that if Mrs. Angeloni was worried, Angeloni could stop working there. He also suggested that they meet with Reverend Hazzouri. Mrs. Angeloni did not want to have such a meeting, and the family instead decided that Angeloni should no longer work at Villa St. Joseph. Angeloni's resignation was effective January 19, 1998. She filed suit more than four years later.

## II. Standard of Review

We review the District Court's grant of summary judgment de novo. See Sempier v. Johnson & Higgins, 45 F.3d 724, 727 (3d Cir. 1995). Summary judgment is proper

---

[1] Angeloni did stop serving Reverend Hazzouri, but eventually resumed service to his table and did so of her own accord.

when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If the evidence would be insufficient to allow a reasonable jury to find for the non-moving party, summary judgment is warranted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In reviewing that evidence, we consider it and all reasonable inferences therefrom in the light most favorable to the non-moving party. Eddy v. V.I. Water & Power Auth., 369 F.3d 227, 228 n.1 (3d Cir. 2004).

## III. Discussion

### 1. Title VII Claims

The District Court granted appellees' motion for summary judgment on the grounds that: (1) there was no causal connection between Reverend Hazzouri's alleged touching and Bishop Dougherty's "employment actions" against Angeloni to support a claim of *quid pro quo* sexual harassment; (2) the elements of a hostile work environment claim were not satisfied because no reasonable jury could find that *respondeat superior* liability exists; and (3) there was no retaliatory conduct because Angeloni was not constructively discharged, and therefore no adverse employment action was taken against her.[2]

---

[2]For reasons that escape us, appellees did not mention the fact that Angeloni never exhausted her administrative remedies prior to filing suit. See Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997) (analogizing failure-to-exhaust to statutes of limitations); see also Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000) (explaining that a plaintiff in Pennsylvania must first present her employment-discrimination claims to the appropriate agency before going to federal court). Indeed, the first action Angeloni took

4

*A. Quid Pro Quo Sexual Harassment and Retaliation*

Both Angeloni's *quid pro quo* sexual harassment claim and her retaliation claim depend upon her ability to prove that she was constructively discharged. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281-82 (3d Cir. 2000) (explaining that a plaintiff trying to prove *quid pro quo* sexual harassment must show that "her response to unwelcome advances was subsequently used as a basis for a decision about [employment]."). This is fundamental to her claims, because "constructive discharge acts as the functional equivalent of an actual termination" that can ground an employment discrimination suit. See Suders v. Easton, 325 F.3d 432, 446 (3d Cir. 2003).

To find constructive discharge, a court "need merely find that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." Goss v. Exxon Office Sys. Co., 747 F.2d 885, 888 (3d Cir. 1984). Put somewhat differently, the plaintiff must show that the alleged discrimination goes beyond a "threshold of 'intolerable conditions.'" Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 169 (3d Cir. 2001). "Intolerability . . . is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign—that is, whether [she] would have had no choice but to resign." Connors v. Chrysler Financial Corp., 160 F.3d 971, 976 (3d Cir. 1998) (internal citations omitted).

with reference to this case was to file her complaint in the District Court on February 20, 2002.

5

Although we have considered an employer's suggestion or encouragement that one resign as indicative of constructive discharge, see Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir. 1993), any such suggestion or encouragement is not dispositive. See Suders, 325 F.3d at 446 (noting that the inquiry into constructive discharge is "a heavily fact-driven determination.") (internal citations omitted). Here, it is not disputed that, in December of 1997, Bishop Dougherty suggested that if Angeloni did not feel comfortable working at Villa St. Joseph, she could resign; however, this suggestion was made during the course of a meeting with Angeloni's mother, during which she had expressed concerns for her daughter's safety. As Bishop Dougherty explained in his deposition, he suggested the possibility of resignation because he "felt as a priest that [he] wanted to reach out to [Angeloni's parents]." A258-59. Significantly, during that same meeting, Bishop Dougherty offered to have a meeting with both of Angeloni's parents and Reverend Hazzouri to see if they could come to some sort of resolution. And, when Angeloni continued to work after the December 1997 meeting, Bishop Dougherty said that he was "thrilled with that." A263.

Not only does Bishop Dougherty's suggestion that Angeloni consider resigning seem completely benign, but the conduct of which Angeloni complained had ended months earlier and the decision to resign was made by Angeloni and her parents at home. Given these facts, there is little or nothing in the record that supports Angeloni's argument that a reasonable person would consider her work conditions so intolerable that she would feel compelled to resign. That conclusion destroys any constructive discharge

6

claim and, thus, there was no adverse employment action. Summary judgment was, therefore, proper on both the *quid pro quo* sexual harassment and the retaliation claims.[3]

### B. Hostile Work Environment

In order to succeed on her claim that the Diocese of Scranton and the Villa St. Joseph are liable for creating a "hostile work environment", Angeloni was required to satisfy a five-prong test, showing that: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was "pervasive and regular"; (3) she was detrimentally affected; (4) the discrimination she points to would also detrimentally affect another reasonable young woman in the same position; and (5) respondeat superior liability exists. See Suders, 325 F.3d at 441. The District Court concluded that there was "no dispute" that the first and third requirements were satisfied, and held that a reasonable jury could find that the second and fourth requirements were also met. While it appears that the District Court's conclusions might have been overly generous to Angeloni, we will accept them and nonetheless affirm the grant of summary judgment, as the final requirement certainly was not met. Angeloni's claim of hostile work environment, therefore, necessarily fails.

Applying traditional agency principles, respondeat superior liability exists when

---

[3]It has been assumed for the purposes of argument that Bishop Dougherty could be considered an "employer" as the rector at Villa St. Joseph; however, it should be noted that Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks". 42 U.S.C. § 2000e(b). We do not have information in the record confirming that the Villa would satisfy those requirements.

7

"the defendant knew or should have known of the harassment and failed to take prompt remedial action." Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990) (internal citations omitted). Therefore, "if a plaintiff proves that management-level employees had actual or constructive knowledge about the existence of a sexually hostile work environment and failed to take prompt and adequate remedial action, the employer will be liable." Id.

Angeloni admits that she did not tell Ms. Balint about the touching until May or June of 1997. By July, Ms. Balint had told Bishop Dougherty. Even assuming that Ms. Balint and Bishop Dougherty would be considered management-level "employees", both took "prompt and adequate" remedial action. For her part, Ms. Balint referred the matter to Bishop Dougherty, interviewed the other waitresses, and suggested that Angeloni could be relieved of her serving duties at Reverend Hazzouri's table. For his part, Bishop Dougherty said that he felt he "had to get to the bottom of this," so he spoke with Reverend Hazzouri and Ms. Balint several times. He also relayed the situation to the Diocese and told Reverend Hazzouri that he was to cease any conduct that might make Angeloni uncomfortable. Finally, he approved Ms. Balint's suggestion that Angeloni stop serving Reverend Hazzouri's table, a suggestion that was immediately implemented.

In terms of the adequacy of these remedial steps, by all accounts any touching that had occurred ended by July 1997. Indeed, even after Angeloni chose to ignore the suggestion not to serve Reverend Hazzouri, and began doing so again, she never reported further inappropriate conduct. Summary judgment was properly granted on the hostile

8

environment claim.[4]

2.  State Law Claims

The District Court also concluded that, because summary judgment was granted on Angeloni's federal claims, it would not exercise supplemental jurisdiction over the state law claims.  The exercise of supplemental jurisdiction is a matter of discretion.  See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right."), superseded by statute in 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction").  And, as we have stated, when a federal claim could be, or has been, dismissed on summary judgment, "the court should ordinarily refrain from exercising [supplemental] jurisdiction in the absence of extraordinary circumstances."  Tully v. Mott Supermarkets, Inc., 540 F.2d 187, 196 (3d Cir. 1976); see also Univ. of Md. v. Peat, Marwick, Main & Co., 996 F.2d 1534, 1540 (3d Cir. 1993).  The District Court properly refrained from exercising supplemental jurisdiction here.

**IV.  Conclusion**

For the foregoing reasons, we will affirm the order of the District Court.

---

[4]Although individually named in the suit, Reverend Hazzouri could not be liable under Title VII because he was not Angeloni's employer; see 42 U.S.C. § 2000e(b).