

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-29-2008

# Kant v. Seton Hall Univ

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4464

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Kant v. Seton Hall Univ" (2008). *2008 Decisions.* Paper 1114.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1114

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 06-4448 and 06-4464

———

CHANDER KANT,

Appellant/Cross-Appellee

v.

SETON HALL UNIVERSITY,

Appellee/Cross-Appellant

———

On Appeal from the United States District Court
for the District of New Jersey
(CIVIL NO. 00-CV-05204)
District Judge:  Honorable William H. Walls

———

Argued April 16, 2008

Before: AMBRO, FISHER, <u>Circuit</u> <u>Judges</u>, and MICHEL,[*] <u>Chief</u> <u>Circuit</u> <u>Judge</u>

Filed: May 29, 2008

———

[*]  Honorable Paul R. Michel, Chief Judge, United States Court of Appeals for the
Federal Circuit, sitting by designation.

CHANDER KANT  (ARGUED)
19 Birchwood Drive
Short Hills, NJ 07078

Appellant/Cross-Appellee Pro Se


JOHN J. PEIRANO, ESQUIRE (ARGUED)
James Lidon, Esquire
Kimberly A. Capadona, Esquire
McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075

Attorneys for Appellee/Cross-Appellant Seton Hall University

————

OPINION

————


MICHEL, Chief Circuit Judge

Chander Kant, an Associate Professor of Economics at Seton Hall University's Stillman School of Business, sued Seton Hall in the United States District Court for the District of New Jersey, alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").  The District Court dismissed Kant's discrimination claims at summary judgment, but proceeded to a jury trial on Kant's retaliation claim concerning Seton Hall's denial of his 1998 application for promotion to Full Professor.  The jury found Seton Hall liable for unlawful retaliation, and awarded Kant $80,000 in damages.

2

Both parties filed post-trial motions, most of which were denied by the District Court, and both parties now appeal. Kant appeals various aspects of the jury instructions and verdict sheet regarding damages, as well as the District Court's denial of Kant's motion for an injunction ordering Seton Hall to promote him. Seton Hall cross-appeals the District Court's exclusion of evidence that Kant had been denied promotion several times before 1998, and alleges that the jury instructions and verdict sheet stated the wrong standard for liability.

Because the District Court did not commit reversible error in any respect urged by either party, we will affirm.

I.

Chander Kant was born in India and is a naturalized citizen of the United States. Kant has a Ph.D in economics, and was hired by Seton Hall as an Associate Professor at the Stillman School of Business in 1989. Seton Hall granted Kant tenure in 1992 as an Associate Professor, and in 1996, Kant applied for a promotion to Full Professor.

When a faculty member at Seton Hall applies for a promotion, the application proceeds through multiple levels of review–from the applicant's department (e.g., Economics), to the Dean and a Rank & Tenure Committee within the applicant's school (e.g., the Stillman School of Business), to the University Provost and a University-wide Rank & Tenure Committee, and finally to the Board of Regents–with each reviewer providing a recommendation to the reviewers at the next level.

3

In 1996, Kant's application had the support of John Dall, the Chairman of the Economics Department at the Stillman School. But the Stillman School Dean, John Shannon, and the Stillman School Rank & Tenure Committee recommended against promotion. The University Rank & Tenure Committee also recommended against promotion by a vote of 7-2, and the University Provost denied Kant's 1996 application.

Also in 1996, Kant sought to reduce his courseload for a semester, but his request was denied by Sheldon Epstein, the Associate Dean of the Stillman School. Kant filed an internal grievance against Epstein, alleging that Epstein had discriminated against Kant on the basis of national origin by denying Kant's request while granting the similar request of an American-born professor. Kant's grievance was denied by Dean Shannon.

In 1997, Kant again applied for a promotion to Full Professor. This time Epstein, who had been appointed Interim Dean of the Stillman School, opposed Kant's application. Kant's application was again denied, with the University Rank & Tenure Committee again voting 7-2 against promotion.

In August of 1998, Kant filed an internal grievance against Chairman Dall and Associate Dean Epstein. Kant alleged that Dall and Epstein had discriminated against him on the basis of his national origin by assigning him inferior work, denying his travel expense reimbursement requests, denying his request for a paid leave of absence, and providing misleading information about him in connection with his earlier application for promotion. The new Dean of the Stillman School, Dee Martin, denied Kant's grievance.

4

Kant appealed to the University Provost and then to the Faculty Senate Grievance Committee, and both eventually affirmed the denial of Kant's grievance.

In October of 1998, while the grievance against Dall and Epstein was pending, Kant applied again for a promotion to Full Professor. Chairman Dall abstained from voting at the department level because of the pending grievance, and with Dall abstaining the Economics Department recommended Kant for promotion by a vote of 2-1. However, Dean Martin recommended against promotion, and the Stillman School Rank & Tenure Committee, which included Dall as a member, voted 3-3. Dall was one of the three votes against promotion–even though he had abstained at the department level, he was apparently told by University counsel that he could not abstain at the Stillman School Rank & Tenure Committee level. Kant's application then went to the University Rank & Tenure Committee, which voted against promotion (this time by a vote of 8-1), and the University Provost denied Kant's 1998 application.

In 1999, after being notified that his 1998 application was denied, Kant filed charges with the Equal Employment Opportunity Commission ("EEOC"), alleging that Dall, Epstein, Shannon, and Martin had discriminated against him on the basis of race and national origin. The EEOC dismissed the charges in 2000 and gave Kant notice of his right to sue, and on October 23, 2000, Kant sued Seton Hall in the United States District Court for the District of New Jersey. Kant's suit alleged both employment discrimination on the basis of national origin and retaliation under Title VII, with alleged conduct dating

5

as far back as 1994 and continuing into 2000.

In 2002, Seton Hall moved for summary judgment, arguing that Kant's suit was untimely with respect to most of the alleged violations because they predated his EEOC complaint by more than the statutory limitations period, and that the University's decision to deny Kant's 1998 application for promotion was based on the deficiencies in Kant's qualifications, not on his national origin or his filing of internal grievances alleging discrimination. The District Court granted Seton Hall's motion with respect to events before December 17, 1998 and with respect to Kant's discrimination claim, but denied the motion with respect to Kant's retaliation claim. Kant v. Seton Hall Univ., No. 00-CV-05204, slip op. at 21-22 (D.N.J. Jan. 3, 2003). The District Court held that Kant's filing of grievances was a protected activity and that a reasonable jury could find that Seton Hall's proffered reason for the 1998 promotion decision was pretextual. Id.

## II.

Kant's retaliation claim, regarding the 1998 promotion decision, proceeded to a jury trial in March and April of 2006. Seton Hall sought to introduce evidence of Kant's unsuccessful applications for a promotion in 1996 and 1997, but the District Court excluded this evidence, explaining that because each promotion decision was a separate incident, it would be unduly prejudicial to engage in "mini-trials" of the earlier decisions when only the 1998 decision was challenged as retaliatory.

At the close of evidence, the parties argued over jury instructions and the form of

the verdict sheet. Kant sought a jury instruction on punitive damages, and asked that the verdict sheet contain separate lines for damages due to lost wages and emotional distress. The District Court denied these requests. Seton Hall sought an instruction that Kant could only prevail if he proved "that he would have been promoted but for Dall and Martin's alleged retaliation," but the District Court instead instructed the jury that "[i]f you determine that defendant retaliated against plaintiff during the early stages of the evaluation and individuals involved in the promotion process at later stages reviewed, considered, and were influenced by the earlier evaluation, you may conclude that the retaliation had impact on the ultimate decision." Seton Hall objected to this instruction after it was given on the ground that it didn't state a high enough standard of causation. The District Court left this instruction in place, but also clarified to the jury, before deliberations began, that Kant needed to prove that "retaliation was more likely than not a determinative factor in Kant's non-promotion by Seton Hall."

The jury deliberated for a few hours before returning a verdict, finding the following (in the words of the interrogatories on the verdict sheet): (1) Kant "prove[d] by a preponderance of the believable evidence that Dr. Dall's vote against his promotion was in retaliation for [Kant's] lodging a grievance against him or that retaliation was more likely than not a determinative factor in Dr. Dall's vote"; (2) Kant did not prove the same for Dean Martin's vote; (3) Dall's retaliation "contaminated the promotion process"; (4) Kant "prove[d] by a preponderance of the believable evidence that [Seton Hall's] actions

7

were a causal link to his losses"; and (5) $80,000 is "a fair and reasonable amount of money to compensate [Kant] for his damages."

Kant then moved for pre-judgment interest, for additur, and for an injunction ordering Seton Hall to promote him to Full Professor. Kant also renewed his request for punitive damages. Seton Hall moved for judgment notwithstanding the verdict, and in the alternative for a new trial. The District Court granted pre-judgment interest on an amount corresponding to Kant's back-pay claim, but denied all other motions and entered judgment in September of 2006. Kant then moved for "revision" of the judgment, asking to remit part of the $80,000 jury award in exchange for an injunction ordering Seton Hall to promote him, but the District Court denied Kant's motion.

Both Kant and Seton Hall filed timely notices of appeal on October 13, 2006. We have jurisdiction under 28 U.S.C. § 1291.

III.

The parties contest various aspects of the jury instructions and verdict sheet, and the District Court's decisions regarding evidence and remedies. We exercise plenary review to ensure that jury instructions do not misstate a legal standard, Abrams v. Lightolier Inc., 50 F.3d 1204, 1212 (3d Cir. 1995), but we review a district court's decision to use particular language in the jury charge for abuse of discretion. Cooper Dist. Co. v. Amana Refrigeration, Inc., 180 F.3d 542, 549 (3d Cir. 1999). Similarly, we review the court's formulation of jury interrogatories for abuse of discretion, Armstrong

8

v. Dwyer, 155 F.3d 211, 214 (3d Cir. 1998), with the limitation that "the questions asked of the jury [must] be adequate to determine the factual issues essential to the judgment." McNally v. Nationwide Ins. Co., 815 F.2d 254, 266 (3d Cir. 1987) (quoting Kornicki v. Calmar Steamship Corp., 460 F.2d 1134, 1139 (3d Cir. 1972)).

We review determinations concerning the admissibility of evidence for abuse of discretion, Karkkainen v. Kovalchuk, 445 F.3d 280, 288 (3d Cir. 2006), with the understanding that the Federal Rules of Evidence provide a district court with "broad discretion to exclude collateral matters that are likely to confuse the issues." United States v. Casoni, 950 F.2d 893, 919 (3d Cir. 1991). Finally, we review the District Court's decisions concerning equitable remedies for abuse of discretion, because in Title VII cases, "federal courts are empowered to fashion such relief as the particular circumstances of a case may require to effect restitution." Franks v. Bowman Transp. Co., 424 U.S. 747, 764 (1976); see also Goss v. Exxon Office Sys. Co., 747 F.2d 885, 890 (3d Cir. 1984) ("The award of future lost earnings in Title VII cases is an alternative to the traditional equitable remedy of reinstatement[, and t]he choice of such a remedy in lieu of an order that the plaintiff be reinstated rests in the sound discretion of the trial court.").

1.

We will begin with Kant's appeal and then will proceed to Seton Hall's cross-appeal. Kant first contends that the jury instructions and verdict sheet misled the jury into

awarding inadequate relief.  Specifically, Kant argues that Title VII provides separately for back pay and for compensatory damages, and that the District Court erred (1) by failing to provide separate lines on the verdict sheet for economic damages (e.g., front-pay and back-pay) and non-economic damages (e.g., emotional pain, suffering, mental anguish), and (2) by failing to list "lost prestige" as an element of compensatory damages.

But the District Court clearly instructed the jury that if it found Seton Hall liable, it could award Kant lost pay and "compensatory damages for injuries such as emotional pain, suffering, inconvenience, mental anguish, humiliation and loss of enjoyment of life."  Given these instructions, the provision of a single line on the verdict sheet, asking "[w]hat is a fair and reasonable amount of money to compensate the plaintiff for his damages," was certainly adequate to present the issues of economic and non-economic damages to the jury, and was not an abuse of discretion.  McNally, 815 F.2d at 266.  And given the range of potential injuries listed in the jury instructions, the District Court did not abuse its discretion by failing to recite the exact phrase "loss of prestige."  Indeed, to the extent that Kant has suffered a loss of prestige in the economics profession for being known as an associate professor instead of a full professor, that loss is bound to be reflected in lost wages, mental anguish, humiliation, and inconvenience, all of which were included in the District Court's instructions.

Kant next contends that the District Court erred by refusing to instruct the jury on punitive damages.  A plaintiff may recover punitive damages under Title VII in a case of

10

intentional discrimination "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). The Supreme Court has explained that "[t]he terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999). Further, even if a plaintiff can show "malice" or "reckless indifference" to his federal rights on the part of an individual, the plaintiff "must impute liability for punitive damages to respondent." Id. at 539. Thus, the Court has held that "in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good-faith efforts to comply with Title VII.'" Id. at 545 (internal citation omitted).

Here, the District Court held that Kant delayed too long before seeking punitive damages, substantially prejudicing Seton Hall's defense, and that punitive damages were not warranted in any event. Even assuming that Kant did not delay, we agree that the facts of this case do not support an instruction regarding punitive damages against Seton Hall. The District Court found that despite any retaliation by Dall, Seton Hall made good-faith efforts to comply with Title VII, including by promulgating anti-discrimination policies and creating a council against discrimination. Kant argues that these are merely

11

pro-forma measures without a meaningful intent to comply with the law. But beyond the fact that Kant's own internal grievances were denied by Seton Hall, he offers no substantial evidence from which a factfinder could conclude that Seton Hall acted in bad faith. Thus the District Court did not err in refusing to instruct the jury regarding punitive damages.

Finally, Kant contends that the District Court erred in denying his request for the equitable remedy of promotion in lieu of front-pay. He acknowledges that courts have broad discretion to choose appropriate remedies in Title VII cases, but argues that reinstatement or promotion is a preferred remedy, that his Complaint included a request for promotion, and that the District Court should not have submitted the issue of front-pay to the jury without first rendering a formal ruling on promotion. Cf. Hansard v. Pepsi-Cola Metro. Bottling. Co., 865 F.2d 1461, 1469-70 (5th Cir. 1989) ("the district court's award of front pay in this case was improper without a precedent finding that reinstatement was not feasible").

However, Kant did not ask the District Court to rule on the feasability or propriety of promotion before the case was submitted to the jury, and raised the issue only after seeking and winning the alternative remedy of front-pay. At that point in the proceedings, it was well within the District Court's discretion to rule that the jury's award of front-pay was the appropriate forward-looking remedy in this case. See Goss, 747 F.2d at 890; cf. Feldman v. Philadelphia Hous. Auth., 43 F.3d 823, 831 (3d Cir. 1994) (public

12

employee, First Amendment case) (reinstatement "is not the exclusive remedy, because it is not always feasible, such as when there exists 'irreparable animosity between the parties'") (internal citation omitted).

## 2.

In its cross-appeal, Seton Hall argues that the District Court erred in instructing the jury regarding the standard of causation required for retaliation liability. Seton Hall asserts–quite correctly–that the causation standard in Title VII retaliation cases in our Circuit is the "determinative effect" standard, i.e., "the plaintiff's burden is to prove that an impermissible factor 'played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process.'" Woodson v. Scott Paper Co., 109 F.3d 913, 932 (3d Cir. 1997) (quoting Miller v. CIGNA Corp., 47 F.3d 586, 588 (3d Cir. 1995) (en banc)); see also Shaner v. Synthes, 204 F.3d 494, 501 n.8 (3d Cir. 2000) ("We recently have made clear that a plaintiff's ultimate burden in a retaliation case is to convince the factfinder that retaliatory intent had a 'determinative effect' on the employer's decision.").

Here, at Seton Hall's urging, the District Court explicitly instructed the jury that for Kant to prevail, he needed to prove that "retaliation was more likely than not a determinative factor in [his] non-promotion by Seton Hall." Conceding that this instruction stated the proper standard for causation, Seton Hall now argues that the District Court nevertheless erred by refusing to withdraw its earlier instruction ("if you

13

determine that defendant retaliated against plaintiff during the early stages of his evaluation and individuals involved in the promotion process at later stages reviewed, considered, and were influenced by the earlier evaluation, you may conclude that the retaliation had an impact on the ultimate decision").

We do not think that the District Court's combined instructions misstated the applicable law or were so confusing or misleading as to constitute an abuse of discretion. See Grazier v. City of Philadelphia, 328 F.3d 120, 126 (3d Cir. 2003) ("in evaluating jury instructions, we shall only find discretion abused 'if the instruction was capable of confusing and thereby misleading the jury'") (internal citation omitted). Kant's theory of liability, as the District Court explained at the post-trial motions hearing, was that "instead of a positive vote coming out of the [Stillman] school's determination, they had a split vote [because of Dall's negative vote in the Stillman School Rank and Tenure Committee] which, in effect, [a]ffected the other reviewing board's impression of the plaintiff." Kant, No. 00-CV-05204 (D.N.J. Sept. 11, 2006) (transcript). Thus, the jury instructions were consistent with Kant's theory and the applicable law; the "determinative factor" instruction accurately conveyed Kant's burden of proof, and the earlier instruction conveyed to the jury that it was allowed to make certain inferences to reach a finding that Kant had met his burden. See, e.g., Roebuck v. Drexel Univ., 852 F.2d 715, 727 (3d Cir. 1988) ("[A] plaintiff in a discrimination case need not prove intentional discrimination at every stage of the review process. . . . [I]t plainly is permissible for a jury to conclude that

14

an evaluation at any level, if based on discrimination, influenced the decisionmaking process and thus allowed discrimination to infect the ultimate decision.").

Seton Hall similarly contends that the District Court erred by framing the verdict sheet to ask the jury whether Dall's retaliation "contaminated the promotion process," rather than asking explicitly whether Dall's retaliation had a "determinative effect" on Seton Hall's ultimate promotion decision. But in light of the District Court's instruction to the jury that it was to decide whether retaliation was "more likely than not a determinative factor in Kant's non-promotion by Seton Hall," we think the verdict sheet was "adequate to determine the factual issues essential to the judgment." McNally, 815 F.2d 266.

Finally, Seton Hall contends that the District Court abused its discretion by excluding evidence that Kant had been denied a promotion to Full Professor in years prior to 1998, while admitting evidence that Dall had changed his vote in 1998. According to Seton Hall, the earlier denials represent an academic consensus among many evaluators that Kant was not qualified to be a Full Professor, and the District Court's exclusion of this evidence deprived Seton Hall of the opportunity to prove to the jury that this academic consensus–not retaliatory animus–explained the denial of Kant's 1998 application.

However, Kant has a very different view of these earlier promotion decisions–he contends that Seton Hall discriminated against him on the basis of national origin. In

15

light of that dispute, the District Court reasonably concluded that Seton Hall's

introduction of the prior denials would lead to a series of "mini-trials" over Kant's pre-

1998 discrimination claims–the very claims the District Court had already dismissed as

time-barred at summary judgment. A court has broad discretion to exclude evidence that

is merely collateral to the issues in the case, Gay v. Petsock, 917 F.2d 768, 773 (3d Cir.

1990), and the District Court did not abuse that discretion here. Nor did the District Court

abuse its discretion by admitting evidence of Dall's votes, as Dall's change of position

was central to Kant's claim of retaliation.

IV.

For the forgoing reasons, we will affirm the judgment and orders of the District

Court.

16