**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-2079
_____

DONALD C. REIFINGER, JR.,
                                   Appellant
v.

PARKLAND SCHOOL DISTRICT

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 12-cv-03671)
District Judge:  Honorable Jeffrey L. Schmehl

_____

Submitted under Third Circuit LAR 34.1(a)
December 11, 2014

Before:  FUENTES, FISHER, and KRAUSE, *Circuit Judges.*

(Filed: February 9, 2015)

_____

OPINION[*]

_____

KRAUSE, *Circuit Judge.*

Donald C. Reifinger, Jr., appeals from the District Court's order granting summary

judgment on his constructive discharge and retaliation claims under the Age

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Discrimination in Employment Act ("ADEA"), as well as a claim under the Pennsylvania Human Relations Act ("PHRA"). We will affirm because we conclude the record amply supports the District Court's grant of summary judgment.[1]

Reifinger was born in 1951 and began working as a teacher in 1974, primarily teaching a ninth grade business course for the Parkland School District ("Parkland"). In 1999, he began working as a part-time driving instructor in Parkland's Behind-the-Wheel program, where he earned approximately $25,000 to $30,000 in additional income per year. In 2003, Reifinger became the full-time drivers' education classroom teacher at Parkland and also began administering the Behind-the-Wheel program. He adopted his predecessor's system for scheduling instructors for Behind-the-Wheel shifts, which was based on seniority.

As the drivers' education program grew, Parkland decided to create a department chair position. Although Reifinger applied and interviewed, Parkland ultimately selected Bonnie Bortz for the position. Bortz was born in 1952, began working at Parkland in 1975, and started teaching in the Behind-the-Wheel program in 1992. After Bortz became the department chair, Parkland implemented a new system for scheduling

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C § 1291. "[O]ur review of a grant of summary judgment is plenary, and in making that review we use the same standard as a district court: whether there are genuine issues of material fact precluding entry of summary judgment." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009) (citing *E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 191 (3d Cir. 2008)). Because we write for the parties, we recite only those facts necessary to our conclusion.

2

instructors for shifts. Under the new system, instructors were scheduled on a rotation, rather than by seniority, so that all instructors received an equal number of assignments. Reifinger did not object to the new system; in fact, he testified that he had previously suggested such a system to Parkland's administration.[2] Yet Reifinger and other senior instructors received fewer assignments than they had under the old system. Reifinger alleged that there were occasions when he should have been called to fill in for an instructor who was unavailable, but that other instructors, including retired instructors, were called in instead.

In February 2009, Reifinger went to Bortz's office to discuss issues related to the drivers' education program. Bortz later e-mailed Parkland's administration and reported that Reifinger harassed her and that she did not feel comfortable or safe meeting alone with him.[3] A few weeks later, the principal issued a written reprimand because Reifinger consistently failed to cooperate with fellow driving instructors regarding scheduling. Other instructors would switch shifts to help accommodate their colleagues' schedules (without forcing anyone to lose shifts), while Reifinger would never agree to switch, instead taking other instructors' shifts so he could make more money.[4] In October 2009,

---

[2]App. 4-5.

[3]*Id.* Reifinger testified at his deposition that he does *not* believe Bortz made this report because of his age. (*Id.*)

[4]Reifinger testified that he did not *want* to switch hours with anyone. (App. 6.)

Reifinger went on a week-long trip without coordinating with Bortz about reassigning his Behind-the-Wheel shifts. Bortz thus gave those shifts to other instructors.

In April 2010, two physical education teachers accused Reifinger of instructing a student to drive a vehicle through a crosswalk while their physical education classes were crossing the street. Following an investigation, Reifinger received another written reprimand.[5] Reifinger was suspended from the Behind-the-Wheel program until September 2010 but was able to return in August 2010 after filing a grievance with the teachers' union.

In July 2011, Parkland terminated the Behind-the-Wheel program. Reifinger remained the full-time drivers' education classroom instructor. About six months after the program was disbanded, however, Reifinger announced his retirement, effective June 2012, explaining that he was making less money working than he would following retirement.[6]

Reifinger sued Parkland after he retired. He claimed he was constructively discharged and retaliated against in the administration of the Behind-the-Wheel program because of his age in violation of the ADEA and PHRA. The District Court granted Parkland's motion for summary judgment, finding that Reifinger could not establish a

---

[5]Reifinger agreed that driving through a crosswalk without yielding to a pedestrian was a serious offense and admitted that such an incident should have been investigated by school officials. (*Id.*)

[6]Nobody at Parkland requested that he retire. (App. 6-7.)

*prima facie* case of constructive discharge because: (1) Reifinger did not suffer an adverse employment action, as Reifinger's decision to retire was voluntary and was made six months after Parkland terminated the Behind-the-Wheel program; and (2) Reifinger did not submit evidence that permitted a reasonable inference of age discrimination. The District Court found that none of the working conditions associated with the Behind-the-Wheel program were so objectively intolerable as to cause a constructive discharge, nor was there any objective evidence that those conditions resulted from Reifinger being treated differently than a younger employee.

Reifinger argued that the new rotating system favored younger individuals, but the Court found that "according to [Reifinger's] own testimony, it was not his age which caused the new rotational system to be implemented in a way which, according to [him], favored younger individuals, but rather it was Ms. Bortz's alleged decision to accommodate friends of Paul Stewart, another driving instructor, which caused any alleged scheduling discrepancy."[7] The District Court found that the reprimands Reifinger received were not adverse actions because they did not alter the conditions of his employment, and the fact that Reifinger did not submit any evidence "other than his own subjective belief" that the investigation of the crosswalk incident had anything to do with his age.[8] Because Reifinger could not demonstrate an adverse employment action, the

---

[7]App. 10-11. Reifinger said at his deposition: "I just think there's an unfair scheduling practice here to accommodate friends of Paul Stewart." (App. 69.)

[8]App. 13 (citing *Weston v. Pennsylvania*, 251 F.3d 420, 430-31 (3d Cir. 2001)).

District Court concluded that Reifinger's retaliation claim also failed. Finally, noting that the same legal standards apply to ADEA and PHRA claims, the District Court also granted summary judgment on Reifinger's PHRA claim.

On appeal, Reifinger argues that the adverse employment action he suffered was a constructive discharge, relying largely on our holding in *Goss v. Exxon Office Systems Company*.[9] There, we held that a plaintiff claiming constructive discharge must show that "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign."[10] Reifinger interprets *Goss* as holding that "a reassignment to a less lucrative territory could constitute a constructive discharge, based on the substantial pay cut involved and the employee's loss

---

[9]747 F.2d 885, 888 (3d Cir. 1984). To establish a claim under the ADEA, "[a] plaintiff must prove by a preponderance of the evidence . . . , that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009). Courts apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), where a plaintiff must first establish a *prima facie* case of discrimination. *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007). Under the ADEA, a plaintiff can establish a *prima facie* case by demonstrating that (1) he is over forty, (2) he is qualified for the position in question, (3) he suffered from an adverse employment action, and (4) his replacement was sufficiently younger to permit a reasonable inference of age discrimination. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 247 (3d Cir. 2006) (citing *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004)). If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (per curiam). "The plaintiff then must establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." *Id.*

[10]*Goss*, 747 F.2d at 888.

6

of confidence in herself and her employer," and he points to the loss of income from the introduction of the rotational system as enough to cause a constructive discharge.[11]

*Goss*, however, involved a saleswoman who was repeatedly interrogated and verbally abused by her superiors about whether she planned to have a family over the course of several months during which she suffered two miscarriages and was then reassigned.[12]  Though we noted Goss's potential loss of commission from reassignment, the evidence presented at trial provided much clearer grounds for finding constructive discharge, including that Goss's employer (after describing her as a "wacko" in internal communications) told her to either sign a letter accepting her reassignment or resign.[13]

In contrast, Reifinger was not reassigned.  Parkland simply changed its scheduling system and then disbanded the Behind-the-Wheel program entirely.  Both changes affected young and elderly workers equally and were implemented by a department chair who was essentially the same age as Reifinger.  Reifinger argues, without any citations to the record, that the "record is replete with instances where younger driver education instructors were allowed to play fast and loose with the rotational system, while Reifinger was disciplined for calling out sick."[14]  But Reifinger did not provide any objective

---

[11]Appellant's Br. 15-16.

[12]747 F.2d at 888.

[13]*Id.*

[14]Appellant's Br. 17.

evidence to support these assertions, nor did he explain how he was disciplined.[15]  He also argues that the rotational system "had a severe impact on [his] earnings," and that "[a]fter struggling with these indignities for several years, [he] was eventually pushed out, albeit resigning and taking his retirement."[16]  But, again, Reifinger does not explain *how* he was pushed out.  Further, the Behind-the-Wheel program was discontinued six months before he decided to retire, and he does not argue there was ongoing discrimination outside of the program.  Reifinger asserts that he "would have preferred to keep working," but in a "realistic sense, he was deprived of this opportunity."[17]  However, he was still earning his regular salary as a full-time classroom teacher, and he does not point to any indignities or intolerable conditions that would have forced a reasonable person to retire.  Thus, Reifinger cannot demonstrate that he suffered a constructive discharge.

Moreover, because he does not show how any reprimand he received altered the conditions of his employment, Reifinger cannot prove that he suffered adverse employment action.  Even if any of his complaints about assignments could constitute an adverse employment action (for instance, if he were being unfairly passed over for extra shifts), Reifinger has not shown that his replacement was sufficiently younger to permit a

---

[15]*See* App. 67-68.

[16]Appellant's Br. 20.

[17]Appellant's Br. 20.

reasonable inference of age discrimination. Other drivers who were allegedly treated better, including retirees, were also over forty years old.[18] Further, Reifinger indicated at his deposition that even he believed that any preferential treatment was the result of favoritism, not age considerations. As a result, he cannot establish a *prima facie* case of age discrimination. Because a *prima facie* case of retaliation also requires showing an adverse employment action, Reifinger cannot establish a retaliation claim.[19] Finally, because the "same legal standard applies to both the ADEA and the PHRA," Reifinger cannot succeed on his state law claim.[20] Accordingly, we will affirm the decision of the District Court.

---

[18]*See* App. 52, 54-56, 59.

[19]*See Kachmar v. Sungard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997).

[20]*See Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 n.1 (3d Cir. 2005) (citing *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 509 n.2 (3d Cir. 2004)).